Michael A. STIDHAM, Appellant,

v.

Thomas L. CLARK, Judge, Fayette
Circuit Court, Appellee,

and

Dr. Edwin Bunch; Ray Larson, Com-
monwealth Attorney, Fayette County,
Kentucky; and Cynthia T. Rieker, As-
sistant Commonwealth Attorney, Fay-
ette County, Kentucky (Real Parties
in Interest), Appellees.

No. 2000–SC–0968–MR.

Supreme Court of Kentucky.

May 16, 2002.

R. Burl McCoy, John Kevin West, Tonya S. Conner, McCoy & West, Lexington, Counsel for Appellant.

Thomas L. Clark, Lexington, Counsel for Appellee Thomas L. Clark, Judge, Fayette Circuit Court.

Reuben G. Walker, Jr., Walker, Emmons, Shannon & Baird, P.S.C., Richmond, Counsel for Real Party in Interest Appellee Dr. Edwin Bunch.

Raymond Larson, Commonwealth Attorney, Lexington, Counsel for Real Party in Interest Appellee Ray Larson, Commonwealth Attorney, Fayette County, Kentucky.

Cynthia T. Rieker, Assistant Commonwealth Attorney, Fayette County, Lexington, Counsel for Real Party in Interest Appellee Cynthia T. Rieker, Assistant Commonwealth Attorney, Fayette County, Kentucky.

COOPER, Justice.

Appellant Michael A. Stidham appeals from the denial of his petition for a writ of prohibition filed against Appellee Thomas L. Clark, Judge of the Fayette Circuit Court, to prohibit him from authorizing the release to a Fayette County grand jury of records pertaining to Appellant's treatment by Dr. Edwin Bunch, a licensed psychiatrist. The Court of Appeals denied the petition in a one-sentence order that stated no reason for the denial. However, an earlier order denying Appellant's motion for emergency relief under CR 76.36(4) stated that "[t]he petitioner has not made an adequate showing that the respondent judge has abused his discretion in permitting the discovery of the questioned documents. . . ." Because the disclosure of information claimed to be privileged is not discretionary but requires a finding that the information falls either within or outside the scope of the privilege or within a specified exception to the privilege, and because the record does not reflect that the Commonwealth met the applicable burden of proof necessary to even warrant an *in camera* review of Dr. Bunch's records, we reverse.

The grand jury seeks to review Dr. Bunch's records to determine if Appellant has violated KRS 218A.140(1) by obtaining prescriptions for the same controlled substance from multiple medical practitioners by withholding information from each practitioner that the same prescription has been obtained from another or other practitioner(s). The Appellee Commonwealth's attorney (hereinafter "the Common-

wealth") refers to this offense as "doctor shopping." The grand jury caused a subpoena duces tecum to be served on Dr. Bunch to produce "any and all medical records, including any and all narcotics, contracts, and any and all patient history forms" pertaining to Appellant. The issue was joined by Appellant's motion to quash the subpoena on grounds that the subpoenaed records of his treatment fall within the psychotherapist-patient privilege defined in KRE 507(b):

> General rule of privilege. A patient, or the patient's authorized representative, has a privilege to refuse to disclose and to prevent any other person from disclosing *confidential communications, made for the purpose of diagnosis or treatment of the patient's mental condition,* between the patient, the patient's psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family. (Emphasis added.)

KRE 507(c) identifies three exceptions to the general rule of privilege, none of which apply to this case.

The Commonwealth asserted in response to the motion to quash that (1) Dr. Bunch's records are not privileged records of psychotherapeutic treatment of a mental condition but unprivileged records of medical treatment of a physical condition, or, in the alternative, (2) KRS 218A.280 creates an exception to the privilege in addition to those identified in KRE 507(c). KRS 218A.280 provides:

> Information communicated to a practitioner in an effort unlawfully to procure a controlled substance, or unlawfully to procure the administration of any controlled substance, shall not be deemed a privileged communication.

Judge Clark concluded that whether any or all of the entries in Dr. Bunch's records

were privileged could only be determined by an *in camera* inspection of the entire 296–page record. Following that inspection, Judge Clark rendered an opinion and order finding that the records contain information pertaining to Dr. Bunch's treatment of both Appellant's chronic pain, which was deemed to be medical treatment of a physical condition, and his treatment of psychological and emotional problems caused by that pain, which was deemed to be psychotherapeutic treatment of a mental condition. The judge also found that the records pertaining to the treatment of Appellant's mental condition contain no information falling within the parameters of KRS 218A.280. Accordingly, he concluded that the grand jury could review those entries in the records pertaining to Dr. Bunch's diagnosis and treatment of Appellant's chronic pain but not those entries pertaining to his diagnosis and treatment of Appellant's psychological and emotional problems. The Commonwealth has not contested the latter conclusion, perhaps because the prescriptions claimed to have been obtained in violation of KRS 218A.140(1) were for pain medication. Regardless, since Dr. Bunch's records are not before us for review, we could not determine, even if asked, whether Judge Clark's KRE 104(a) findings of fact with respect to the contents of Dr. Bunch's records are clearly erroneous. Our inquiry is limited to determining what evidence is required to overcome a prima facie showing of privilege and whether sufficient evidence was introduced in this case to warrant the *in camera* review that resulted in Judge Clark's findings.

## I. PSYCHOTHERAPIST–PATIENT PRIVILEGE.

■ Our analysis begins with the almost universally accepted rule that testimonial privileges are generally disfavored and

should be strictly construed. *Slaven v. Commonwealth,* Ky., 962 S.W.2d 845, 853 (1997). "For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." John W. Wigmore, 8 *Evidence* § 2192, at 70 (Little Brown & Co., McNaughton Rev.1961). *See also United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) ("exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth."). Privileges exist as a matter of policy, not reason. Reason mandates admission of evidence that is relevant, competent, and properly authenticated. Policy, however, may mandate exclusion of evidence where necessary to promote a free flow of communication under circumstances indicating an "imperative need for confidence and trust." *Jaffee v. Redmond,* 518 U.S. 1, 10, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996) (quoting *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980)). To that end, the United States Supreme Court has recognized the psychotherapist-patient privilege for federal courts, *Jaffee v. Redmond, supra,* and all fifty states and the District of Columbia have adopted some form of psychotherapist privilege. *Id.* at 12, 116 S.Ct. at 1929. Even before the 1992 adoption of KRE 507, there had been a statutory psychologist-patient privilege in Kentucky since 1948, KRS 319.110,[1] and a statutory psychiatrist-patient privilege since 1966, KRS 421.215.[2]

Unlike the testimonial privileges recognized in federal courts that, pursuant to Federal Rule of Evidence (FRE) 501, are the product of common law development,[3] Kentucky's testimonial privileges are codified in Article V of the Kentucky Rules of Evidence (KRE). KRE 501 includes no provision for common law development of testimonial privileges:

> *Except as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky,* no person has a privilege to:
>
> (1) Refuse to be a witness;
>
> (2) Refuse to disclose any matter;
>
> (3) Refuse to produce any object or writing; or
>
> (4) Prevent another from being a witness or disclosing any matter or produc-

---

1. Enacted 1948 Ky. Acts, ch. 169, § 10; repealed 1964 Ky. Acts, ch. 154, § 18 and replaced with KRS 319.111, 1964 Ky. Acts, ch. 154, § 13; repealed 1990 Ky. Acts, ch. 88, § 92, and 1992 Ky. Acts, ch. 324, § 33.

2. Enacted 1966 Ky. Acts, ch. 121 §§ 1–3; repealed 1990 Ky. Acts, ch. 88, § 92, and 1992 Ky. Acts, ch. 324, § 33.

3. As drafted by the Judicial Conference Advisory Committee on Rules of Evidence and transmitted by the Chief Justice to Congress, the proposed Federal Rules of Evidence defined nine privileges, including a psychotherapist-patient privilege. Proposed Rules 501–513, 56 F.R.D. at 230–61 (1972). Congress, however, declined to adopt specific privileges per se, but instead adopted what is now FRE 501, which provides that privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," except that in civil actions and proceedings where state law applies, privileges shall be determined in accordance with state law. *See Trammel v. United States, supra,* at 47, 100 S.Ct. at 910–11.

ing any object or writing. (Emphasis added.)

■ KRE 507 combined three pre-existing statutory privileges (all repealed concomitantly with the adoption of Kentucky Rules of Evidence), *i.e.,* the psychiatrist-patient privilege (KRS 421.215), the psychologist-patient privilege (KRS 319.111), and the clinical social worker-patient privilege (KRS 335.170(2)), into one "psychotherapist-patient" privilege. *See* Commentary to KRE 507, Evidence Rules Study Committee, Final Draft (1989). As the language of KRE 507 indicates, the privilege applies to (1) "confidential communications" (2) "between a patient, the patient's psychotherapist, or persons who are participating in the diagnosis and treatment under the direction of the psychotherapist" (3) "made for the purpose of diagnosis or treatment" (4) "of a mental condition." Unlike the lawyer-client privilege, KRE 507 does not include a so-called "crime-fraud exception" for communications made for the purpose of committing or abetting a crime or fraud (as opposed to communications concerning a crime or fraud already committed, for which there is no exception). *See* KRE 503(d)(1). And, unlike FRE 501, KRE 501 provides no common law authority to engraft such an exception onto KRE 507. (The procedure for amending the Kentucky Rules of Evidence is described in KRE 1102.) *Compare In re Grand Jury Proceedings (Gregory P. Violette),* 183 F.3d 71 (1st Cir.1999). However, if the privilege is viewed from the perspective of what it includes instead of what is excepted therefrom, a communication made for the purpose of committing a crime or fraud is, "by hypothesis," not one made for the purpose of diagnosis or treatment. Charles A. Wright and Kenneth W. Graham, Jr., 25 *Federal Practice & Procedure* § 5547, at n. 27. (West 1989); *see also* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 520, at 261 (3d ed. Michie 1993). Said otherwise, such a communication is simply not "germane to" the privilege. Wright and Graham, *supra,* § 5533, at n. 70. Several state courts with codified rules of evidence have also reached this conclusion. *State v. Garrett,* 8 Ohio App.3d 244, 456 N.E.2d 1319, 1321 (1983); *State v. Thomale,* 317 N.W.2d 147, 149 (S.D.1982).

## II. KRS 218A.280.

■ Nevertheless, we also agree with the Commonwealth that KRS 218A.280 creates an exception to the psychotherapist-patient privilege in addition to those enumerated in KRE 507(c). KRS 218A.280 and its predecessor statutes, KRS 218.170(2) and KS 3716–17(2), have been a part of our controlled substances laws since 1934,[4] long before recognition of a psychotherapist-patient privilege. By its very language, KRS 218A.280 applies to any claim of privilege with respect to a communication to any medical practitioner for the purpose of unlawfully obtaining a controlled substance. The language in former KRS 421.215 (psychiatrist-patient privilege) was virtually identical to that in present KRE 507 and contained the same exceptions, with some variations in language, now found in KRE 507(c). The legislature had ample opportunity, both when KRS 421.215 was enacted in 1966 and when KRE 507 was adopted in 1992, to repeal or modify KRS 218A.280 or its

---

**4.** 1934 Ky. Acts, ch. 143, § 17, repealed 1972 Ky. Acts, ch. 226, § 33, and reenacted 1972 Ky. Acts, ch. 226 § 30. KS 3716–17(2) was recompiled as KRS 218.170(2) as a part of the 1942 revision of the Kentucky statutes, and KRS 218.170(2) was recompiled with minor changes as KRS 218A.280 when the Uniform Narcotic Drugs Act was repealed and replaced with the Kentucky Controlled Substances Act in 1972.

predecessor if it deemed that statute in conflict with the privileges and exceptions described in former KRS 421.215 or KRE 507. In fact, thirty-six statutes deemed in conflict with or duplicative of the Kentucky Rules of Evidence, including KRS 218A.260 ("Use of confidential informants"), were repealed when the Rules of Evidence were codified. 1990 Ky. Acts, ch. 88, § 92; 1992 Ky. Acts, ch. 324, § 33. Nor could the adoption of the KRE be construed as having impliedly repealed KRS 218A.280. The same enactment that adopted the KRE and repealed thirty-six other statutes also contained this disclaimer: "No existing statutes except those listed in this Act shall be repealed or modified by this Act." 1990 Ky. Acts, ch. 88, § 91. We discern no legislative intent that KRS 218A.280 would not apply to the privilege defined in KRE 507 the same as it applied to its statutory predecessors.

By analogy, *Mullins v. Commonwealth*, Ky., 956 S.W.2d 210 (1997), was a case in which the defendant's wife initially reported to the police that her husband had engaged in acts of sodomy with their 14-year-old babysitter. At trial, however, both the defendant and his wife claimed the husband-wife privilege, KRE 504. Though that privilege contains an exception for wrongful conduct perpetrated against the person of a minor child of either party to the marriage, KRE 504(c)(2)(B), it contains no exception for wrongful conduct perpetrated against the person of an unrelated minor child. However, KRS 620.050(2), which was enacted prior to the adoption of the KRE, created an exception to the husband-wife privilege, then compiled at KRS 421.210(1), in any proceeding involving a dependent, neglected or *abused* child. We held in *Mullins* that KRS 620.050(2) remained applicable as an exception to the husband-wife privilege defined in KRE 504. By the same reasoning, KRS 218A.280 remains applicable as an exception to the psychotherapist-patient privilege defined in KRE 507.

■ But even though KRS 218A.280 applies here, it would not authorize a wholesale release of the entire record of Dr. Bunch's psychotherapeutic treatment of Appellant, but only of those entries that reflect a violation of KRS 218A.140(1). *Cf. State ex rel. Buchman v. Stokes*, 36 Ohio App.3d 109, 521 N.E.2d 515, 517 (1987); Wright and Graham, *supra*, § 5547 (2001 pocket part) ("The [crime-fraud] exception should be limited to those communications that are relevant to the posited crime or fraud.").

### III. BURDEN OF PROOF.

■ Because privileges operate to exclude relevant evidence, "[t]he party asserting the privilege has the burden to prove the privilege applies." *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir.1990). Neither a blanket assertion of the privilege nor a bare showing that the recipient of the communication is a psychotherapist would be sufficient. *In re Grand Jury Proceedings (Gregory P. Violette)*, *supra*, at 73. Here, however, the burden was satisfied by proof that Dr. Bunch's records contained (1) communications by Appellant (2) to his psychiatrist (3) for the purpose of diagnosis or treatment (4) of a mental condition. *Id.* As the opponent of the privilege, the Commonwealth was then required to establish that the privilege had been waived or that entries in the record either were not within the scope of the privilege or were within a specified exception to the privilege. *Cf. United States v. Horvath*, 731 F.2d 557 (8th Cir.1984); Lawson, *supra*, § 5.05, at 229–30. The issue then becomes what is the quantum of proof necessary to overcome an otherwise established claim of privilege?

For many years, the prevailing standard in federal courts was that "[t]here must be a showing of a prima facie case sufficient to satisfy the judge that the light should be let in." *Clark v. United States*, 289 U.S. 1, 14, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). The issue was revisited by the United States Supreme Court in *dictum* in *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619, 2630, 105 L.Ed.2d 469 (1989). While *Zolin* involved application of the crime-fraud exception to the lawyer-client privilege, we discern no conceptual difference between that issue and application of KRS 218A.280 to the psychotherapist-patient privilege. *Zolin* noted that the "prima facie case" standard established in *Clark* had caused "confusion" and been subjected to criticism by legal scholars, *id.* at 563 n. 7, 109 S.Ct. at 2626, then concluded that "[t]he quantum of proof needed to establish admissibility was then, and remains, subject to question." *Id.* This disclaimer can only mean that lower federal courts are free to fashion other and better tests than the "prima facie case" standard to overcome a claim of privilege. Nor do we feel compelled to follow a standard so openly questioned by the very Court that created it.

Professor Lawson also criticizes the "prima facie case" standard and posits that the issue of whether a communication is privileged is simply a factual dispute with respect to the admissibility of evidence and should be resolved by application of KRE 104(a), the same as any other question of admissibility.

> In other situations in which the fate of an item of evidence depends upon proof of facts (for example, that the original of a writing has been lost or destroyed, that the maker of an out-of-court statement acted under consciousness of death in making the statement, etc.), the quantum of proof needed to satisfy the burden of proof is preponderance of the evidence. Is there any reason for a different standard of proof when the facts to be proved involve the crime/fraud exception to the lawyer-client privilege? No one has identified any such reason and none has surfaced in the case law, which may account for the fact that neither the Kentucky Rules of Evidence nor the Federal Rules distinguish between privileges and other rules in their treatment of the problem of preliminary factual issues upon which admissibility of evidence may depend.

Lawson, *supra*, § 5.10, at 242. We agree, but what of the very language of KRE 104(a)?

> Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, *the existence of a privilege*, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b) of this rule. In making its determination it is not bound by the rules of evidence *except those with respect to privileges*. (Emphasis added.)

And of KRE 1101(c)?

> Rules on privileges. The rules with respect to privileges apply at all stages of all actions, cases, and proceedings.

It was noted in *Zolin, supra,* that FRE 104(a), which is identical to KRE 104(a), establishes only that "materials *that have been determined to be privileged* may not be considered in making the preliminary determination of the existence of a privilege." *Id.* at 573, 109 S.Ct. at 2631 (emphasis added). The Court then reasoned that materials claimed to be privileged have not been determined to be privileged until the issue of the applicability of the privilege or the exception is resolved, *id.* at 568, 109 S.Ct. at 2628, thus rejecting the rigid "independent evidence" require-

ment of *United States v. Shewfelt*, 455 F.2d 836 (9th Cir.1972), *cert. denied*, 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). *Zolin*, 491 U.S. at 570, 109 S.Ct. at 2630. We find this reasoning sound and now hold that a claim of privilege can be defeated by proof by a preponderance of the evidence, including the communication or material claimed to be privileged, that the privilege has been waived or that the communication or material is either outside the scope of (or "not germane to") the privilege or falls within a specified exception to the privilege.

## IV. *IN CAMERA* REVIEW.

 We also agree that it would be impossible to identify which entries in Dr. Bunch's records are privileged and which are not without an *in camera* review. We specifically reject Appellant's novel contention that judges who are not medically trained are not competent to separate medical records from psychotherapy records. We also regard that assertion as a non-issue. Communications made for the purpose of medical treatment are not privileged at all, and communications made for the purpose of psychotherapeutic treatment are not privileged to the extent that they fall within the scope of KRS 218A.280. Thus, any entries in Dr. Bunch's records that are found by a preponderance of the evidence to indicate a criminal purpose to violate KRS 218A.140(1) are not privileged, whether those entries pertain to medical or to psychotherapeutic treatment; and that is a legal determination that any judge, whether medically trained or not, is competent to make.

 We do agree, however, that a bare allegation of a criminal purpose is insufficient to warrant an *in camera* review that might "permit opponents of the privilege to engage in groundless fishing

expeditions with [trial] courts their unwitting (and perhaps unwilling) agents." *Zolin*, 491 U.S. at 571, 109 S.Ct. at 2630. However, we also agree that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." *Id.* at 572, 109 S.Ct. at 2631. *Zolin* established the following standard for determining when *in camera* review may be used to determine whether communications or materials claimed to be privileged fall either outside the scope of the privilege or within a specified exception to the privilege:

> [B]efore a ... court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability.... [T]he threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.

*Id.* at 574–75, 109 S.Ct. at 2632. Once that showing is made, the decision whether to engage in *in camera* review rests within the sound discretion of the trial court, considering such factors as the volume of materials the court is asked to review, the relative importance of the alleged privileged materials to the case, and the likelihood that the evidence produced by an *in camera* review, together with other available evidence then before the court, will establish that the privilege has been waived or that the communication or material is either outside the scope of the privilege or within a specified exception to the privilege. *Id.* at 572, 109 S.Ct. at 2631. We agree and now adopt that standard as applicable to requests for *in camera* re-

view with respect to claims of privilege under Kentucky law.

█ The Commonwealth asserts that there exists sufficient threshold evidence to warrant the *in camera* review conducted in this case, specifically, a Kentucky All Schedule Prescription Electronic Reporting (KASPER) report, *see* KRS 218A.202—.204 and 902 KAR 55:110, reflecting that Appellant has obtained prescriptions for the same narcotic drug from multiple practitioners in possible violation of KRS 218A.140(1). Perhaps, but that alleged report is not in this record and was not furnished to Judge Clark prior to his *in camera* review of Dr. Bunch's records.

The Commonwealth has attached to its brief a copy of a letter dated March 6, 2000, purportedly from Dr. Bunch addressed to eight other physicians indicating that Dr. Bunch is in possession of a KASPER report dated March 3, 2000, reflecting that Appellant "has been given narcotic prescriptions by various physicians" in violation of his "narcotics contract" with Dr. Bunch. We need not decide whether this letter, standing alone, constitutes "evidence sufficient to support a reasonable belief that *in camera* review may yield evidence" of a violation of KRS 218.140(1) because (1) the letter was not filed as evidence in the Court of Appeals' record, and (2) it is unclear from Judge Clark's opinion and order whether he received the letter from the Commonwealth prior to his *in camera* review or whether he found it in Dr. Bunch's records during his *in camera* review. (The Commonwealth's only argument to Judge Clark concerning this letter was that the narcotics contract attached thereto constituted a KRE 509 waiver of the psychotherapist-patient privilege. Judge Clark found the issue to be moot because he deemed the

contract to relate to medical treatment, not psychotherapeutic treatment. In fact, the contract only authorized Dr. Bunch to discuss Appellant's case "with other physicians," presumably for the purpose of diagnosis and treatment of Appellant's condition. If so, the authorized disclosure would also be within the privilege described in KRE 507(b) and, thus, not within the scope of KRE 509, which "does not apply if the disclosure itself is privileged." *Id.*)

## V. CONCLUSION.

Accordingly, we reverse the Court of Appeals and hereby prohibit Appellee Judge Clark from providing to the grand jury any evidence obtained during his *in camera* review of Dr. Bunch's records. However, nothing herein precludes another *in camera* review upon receipt of threshold "evidence sufficient to support a reasonable belief that *in camera* review may yield evidence" of a criminal purpose to violate KRS 218.140(1), and, if so, nothing herein would preclude providing the grand jury with any communications or materials in those records found by a preponderance of the evidence, including the communications or materials claimed to be privileged, to be either outside the scope of the privilege or within the scope of KRS 218A.280. We are not unmindful that the result may be the same; but absent sufficient threshold evidence to warrant an *in camera* review, a determination could not be made that there are unprivileged medical records that can be separated from the presumed privileged psychotherapy records, or that certain entries in those records fall either outside the scope of the privilege or within the scope of KRS 218A.280. And absent those determinations, the subpoena presumably would be quashed.

LAMBERT, C.J.; GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion, with STUMBO, J., joining that concurring opinion.

KELLER, Justice, concurring.

I concur fully in the majority opinion, and I write separately only to eliminate any confusion I may have helped foster through my previous suggestion that Kentucky law governing the practice of medicine may create a general physician-patient privilege.[1] While I agree with the majority opinion that no *testimonial privilege* exists in Kentucky for communications made between patient and physician for the purpose of medical treatment, I would still characterize such communications as *confidential* because "physicians ... have an ethical obligation not to disclose information regarding their patients, except with consent or pursuant to an obligation imposed by law or court order."[2]

In Kentucky, the State Board of Medical Licensure has, under its statutory authority to "[p]romulgate a code of conduct governing the practice of medicine and osteopathy, which shall be based on generally recognized principles of professional ethical conduct,"[3] adopted the American Medical Association's Code of Medical Ethics,[4] including that Code's provisions concerning patient confidentiality,[5] and physicians licensed in the Commonwealth are subject to sanctions—including license suspension or revocation[6]—if they breach patient confidences.[7] In my opinion, these provisions prohibit the extra-judicial disclosure by a physician of confidential patient communications and information[8] unless such disclosure is otherwise authorized[9] or required[10] by law.

1. *See* James E. Keller, *Kentucky's Physician–Patient Privilege*, FAYETTE COUNTY BAR ASSOCIATION BAR NEWS, January–February, 1991 at 6 ("[W]hen this issue is next addressed by a Kentucky appellate court, a physician-patient privilege may be recognized under the laws of Kentucky.").

2. Richard H. Underwood & Glen Weissenberger, KENTUCKY EVIDENCE: 2001 COURTROOM MANUAL at 190 (Anderson Publishing Co.2000).

3. KRS 311.565(1)(j).

4. 201 KAR 9:005(1)(a).

5. American Medical Association, Council on Ethical and Judicial Affairs, CODE OF MEDICAL ETHICS (1994) § 5.05:
 **Confidentiality.** The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree. The patient should feel free to make a full disclosure of information to the physician in order that the physician may most effectively provide needed services. The patient should be able to make this disclosure with the knowledge that the physician will respect the confidential nature of the communication. The physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law. *Id.*

6. KRS 311.595.

7. *See* KRS 311.595(16) (permitting the Medical Licensure Board to sanction a physician "upon proof that he licensee has: ... (16) Willfully violated a confidential communication...."); KRS 311.595(9); KRS 311.597(4).

8. *See Horne v. Patton*, 291 Ala. 701, 287 So.2d 824 (1973).

9. *See, e.g.,* KRS 311.282 (authorizing disclosure of positive human immunodeficiency virus (HIV) status under certain circumstances).

10. *See, e.g.,* KRS 620.030(2) (requiring a physician to file a written report with law enforcement officers in cases of child abuse, dependency, or neglect).

However, I agree with the majority opinion that there is no physician-patient privilege in Kentucky that would shield information obtained through the physician-patient relationship from testimonial disclosure. Although the AMA Code of Ethics generally prohibits disclosure of confidential communications or information, it also includes the proviso "unless required to do so by law." KRE 501 "embodies the general obligation to testify" [11] and states that no person has a privilege permitting him or her to refuse to disclose any matter or information "[e]xcept as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky." [12] Accordingly, physicians remain subject to this "general obligation to testify," and no privilege exists to prevent disclosure of confidential patient confidences or information in the judicial forum.

STUMBO, J., joins this concurring opinion.

---

**11.** Kentucky Evidence Rules Study Commission Commentary to KRE 501 (November, 1989).

