William F. MYERS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2000–SC–0405–DG.

Supreme Court of Kentucky.

Aug. 22, 2002.

V. Gene Lewter, Fayette County Legal Aid, Inc., Lexington, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Brian T. Judy, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

On January 24, 1997, Kenny McFadden died from multiple blunt force injuries to his head and neck. A Fayette County grand jury jointly indicted Appellant William F. Myers and Johnny Turner for murder. Turner subsequently agreed to plead guilty to reduced charges in exchange for his testimony against Appellant. Turner testified at trial that he was an eyewitness to the crime and that he saw Appellant beat McFadden to death. Appellant was convicted of manslaughter in the first degree and sentenced to twelve years in prison. The Court of Appeals affirmed. We granted discretionary review and now reverse and remand for a new trial.

Prior to accepting Turner's guilty plea, the trial judge, pursuant to KRS 504.100 and RCr 8.06, ordered Turner examined by the Kentucky Correctional Psychiatric Center (KCPC) to determine his mental

competency to enter a plea. The subsequent examinations resulted in three written reports prepared by three separate psychologists. Each report reflected that Turner was advised prior to the examination that the results of the examination would not be deemed confidential and could be used against him. The reports included information that Turner suffers from mild retardation (I.Q. of 68), as well as cognitive impairments consisting of dementia, secondary to chronic alcoholism, multiple head traumas, and seizure disorder, as well as amnesia, confabulation, and reported audio hallucinations. One psychologist reported that "he has a poor ability to recall information given five minutes earlier." Another reported that:

> Certain aspects of [Turner's] brain damage make it unlikely that he would be able to provide consistent reliable testimony or attend to testimony for long periods of time. His obvious memory deficits, confabulatory tendencies, object-naming difficulties, slowness of mental processing, and unpredictable fluctuations of performance can be expected to directly interfere with adequate participation in his own defense.

The other psychologists opined that Turner was competent to stand trial despite his mental deficiencies. In addition to the results of the mental examinations, two of the three reports indicated that Turner claimed he was not present when McFadden was killed; the third report indicated that Turner claimed he could not remember what happened the night McFadden was killed. Following an evidentiary hearing on the competency issue, the trial judge adjudged Turner competent and allowed him to plead guilty to the reduced charges.

For the purpose of impeaching the credibility of Turner's eyewitness testimony at trial, Appellant sought to introduce the testimonies of the psychologists who had conducted the court-ordered examinations. The trial judge held that the evidence was inadmissible under KRE 507, the psychotherapist-patient privilege. We disagree.

The legislative history of KRE 507 is discussed at length in our recent opinion in *Stidham v. Clark*, Ky., 74 S.W.3d 719 (2002), and need not be repeated here. Nor need we revisit the relationship between the psychotherapist-patient privilege and a criminal defendant's constitutional rights to Confrontation and Due Process of law. *See Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 701–03 (1994), *cert. denied*, 516 U.S. 1154, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996), and *Hodge v. Commonwealth*, Ky., 17 S.W.3d 824, 843–44 (2000), *cert. denied*, 531 U.S. 1018, 121 S.Ct. 581, 148 L.Ed.2d 498 (2000), both of which were tried under the law that preexisted the adoption of the Kentucky Rules of Evidence.[1] The applicable provisions of KRE 507 are:

1. *Eldred* was an appeal from a conviction after a trial held prior to the 1992 adoption of the Kentucky Rules of Evidence. *Hodge* was an appeal from a conviction after a retrial held in 1996, but the *original* trial had been held in 1987. *See* Commentary to KRE 107(b), Evidence Rules Study Committee, Final Draft (1989): "[C]ases tried ... under pre-existing evidence rules must be retried or reconsidered under the same rules if retrial or reconsideration becomes necessary." (We note, however, that KRE 507 is virtually identical to the psychiatrist-patient privilege formerly compiled at KRS 421.215.)

*Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), did not address whether an absolute privilege (as opposed to a qualified privilege) must give way to a defendant's constitutional right to Due Process, *id.* at 57–58, 107 S.Ct. at 1001, and state court decisions are split on the issue. *Compare People v. District Court*, 719 P.2d 722 (Colo.1986) and *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290 (1992), with *Peo-*

(b) General rule of privilege. A patient, or the patient's authorized representative, has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purpose of diagnosis or treatment of the patient's mental condition, between the patient, the patient's psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

(c) Exceptions. There is no privilege under this rule for any relevant communications under this rule:

. . .

(2) If a judge finds that a patient, after having been informed that the communications would not be privileged, has made communications to a psychotherapist in the course of an examination ordered by the court, provided that such communications shall be admissible only on issues involving the patient's mental condition[.]

Absent specific statutory language to the contrary, most jurisdictions hold that a psychotherapist-patient privilege must be premised on a professional confidential relationship, *i.e.*, one in which treatment is contemplated or given, and that such a relationship does not exist with respect to a court-ordered examination for the purpose of determining competency. *See, e.g., Massey v. State*, 226 Ga. 703, 177 S.E.2d 79, 81 (1970), *cert. denied*, 401 U.S. 964, 91 S.Ct. 984, 28 L.Ed.2d 248 (1971); *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761, 776 (1981), *cert. denied*, 463 U.S. 1213, 103 S.Ct. 3552, 77 L.Ed.2d 1398 (1983); 81

Am.Jur.2d, *Witnesses* § 445 (Lawyers Coop.1992). However, most jurisdictions that recognize a psychotherapist-patient privilege have statutes or rules adopting the language recommended in Rule 503(d)(2) of the Uniform Rules of Evidence (URE) promulgated by the National Conference of Commissioners on Uniform State Laws, *viz:*

> (2) Examination by order of court. If the court orders an examination of the mental or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.

██ Unlike KRE 507(c)(2), the exception in URE 503(d)(2) follows the common law view that the patient need not be informed that communications made during the course of the court-ordered examination are not privileged. However, the scope of the exception in URE 503(d)(2) is substantially narrower than the common law view in that it applies only when the evidence is used for the particular purpose for which the examination was ordered, *e.g.*, as here, a competency hearing. In other contexts, communications made during the course of the examination are privileged. *See, e.g., McKinney v. State*, 466 A.2d 356 (Del.1983); *Halacy v. Steen*, 670 A.2d 1371 (Me.1996). KRE 507(c)(2), on the other hand, requires that the patient be informed that statements made during the course of a court-ordered examination are not privileged. Having imposed that requirement, however, KRE 507(c)(2) does not limit the scope of the exception to the particular purpose for which the examina-

---

*ple v. Foskey*, 136 Ill.2d 66, 143 Ill.Dec. 257, 554 N.E.2d 192 (1990), *Commonwealth v. Fuller*, 423 Mass. 216, 667 N.E.2d 847 (1996), and *People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557 (1994). Furthermore, *Ritchie* in-

volved only the right to pretrial discovery of privileged information, not the trial right of Confrontation. *Compare Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

tion was ordered but admits statements made during the course of the examination "on issues involving the patient's mental condition." The credibility of a witness testifying to relevant evidence is always at issue. *Commonwealth v. Maddox*, Ky., 955 S.W.2d 718, 721 (1997); *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 545 (1988) (plurality opinion). And evidence of the mental incapacity of a witness is especially relevant to the issue of the credibility of that witness's testimony. *Mosley v. Commonwealth*, Ky., 420 S.W.2d 679, 680–81 (1967).

■ KRE 507(c)(2) is an almost verbatim adoption of an exception contained in Kentucky's former psychiatrist-patient privilege statute. KRS 421.215(3)(b) (enacted 1966 Ky. Acts, ch. 121, §§ 1–3; repealed 1990 Ky. Acts, ch. 88, § 92, and 1992 Ky. Acts, ch. 324, § 33). We did not have occasion to construe KRS 421.215(3)(b), and the 1989 Commentary to the final draft of the Kentucky Rules of Evidence provides no guidance as to the intended scope of KRE 507(c)(2). In most respects, the privilege rules in Article V of the Kentucky Rules of Evidence were patterned after the proposed Federal Rules of Evidence drafted by the Judicial Conference Advisory Committee but not adopted by the United States Congress. *Stidham v. Clark, supra,* at 723 n. 3. Proposed FRE 504(d)(2) contained language identical to URE 503(d)(2). Nevertheless, the drafters of the Kentucky Rules adopted the broader language of former KRS 421.215(3)(b) instead of the more limited language of URE 503(d)(2) and proposed FRE 504(d)(2). Thus, we conclude that the exception to the psychotherapist-patient privilege for communications made during a court-ordered examination set forth in KRE 507(c)(2) applies, as here, when the patient has testified to relevant evidence and the patient's mental condition is relevant to the issue of his/her credibility as a witness.

■ Also relevant are Turner's prior inconsistent statements to the psychologists that he was not present when McFadden was killed or did not remember how McFadden was killed. It is argued that these statements remain privileged because they are not relevant to the issue of Turner's mental condition. But, if not relevant to his mental condition, the statements were not made "for the purpose of diagnosis or treatment of his mental condition," KRE 507(b), and are admissible because they are not "germane to" the subject matter of the privilege. *Stidham v. Clark, supra,* at 724 (quoting Charles A. Wright and Kenneth W. Graham, Jr., 25 *Federal Practice & Procedure* § 5533, at n. 70 (West 1989)). Subject to compliance with KRE 613, those statements are admissible under KRE 801A(a)(1).

The only other issue raised on appeal is whether the trial judge properly struck two jurors for cause because they stated during *voir dire* that they could not give equal credibility to the testimony of a witness who had received a plea bargain in exchange for his testimony. Since this case is being reversed for a new trial on other grounds, we need not debate whether the excusal of these jurors was error.

Accordingly, we reverse the Court of Appeals and the judgment of conviction and sentence imposed by the Fayette Circuit Court and remand this case to the Fayette Circuit Court for a new trial in accordance with the contents of this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE, KELLER and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents without a separate opinion.