Colin H. Lindsay, Magistrate Judge
This Order will address several matters pending in this case. Two overlapping issues-the parties' cross-motions on discovery (DNs 80 and 84) and the Defendants' compliance, vel non , with the Court's privilege log order (DN 78)-are ripe for review. The Defendants' motion for leave to file a reply longer than 15 pages (DN 96), the parties' agreed motion to amend this case's schedule (DN 101), and the parties' proposed agreed protective order (DN 105) are also ripe.
I. ATTORNEY-CLIENT PRIVILEGE DISPUTE
The Defendants have deflected interrogatories and requests for production by asserting the attorney-client privilege. (See generally DNs 80-6 and 80-7.) The parties have filed cross-motions on the issue. On June 11, 2018, Pinnacle filed a "Motion to Compel Defendants to Fully Respond to Written and Oral Discovery, Produce Documents They Contend are Privileged, and Allow Pinnacle to Use Documents Already in its Possession that Defendants Contend are Privileged." (DN 80.) On June 14, 2018, the Defendants filed a "Joint Motion to Exclude All Attorney-Client Privileged Information, Joint Motion for Protective Order Concerning Attorney-Client Privileged Discovery, and Joint Motion to Strike Attorney-Client Privileged Correspondence Between Defendants and Non-Party Clients Todd Loehnert and Brian Ayres Relied Upon or Referenced by Plaintiff in Pleadings and Complaint."[1] (DN 84.) Both sides have filed responses and replies. (DNs 92, 93, 97, and 98.)
A. Choice of Law
The parties' briefs do not address this key preliminary issue. Because this is a diversity case, the Court must apply Kentucky law to determine the applicability and scope of the attorney-client privilege. See In re Powerhouse Licensing, LLC , 441 F.3d 467, 472 (6th Cir. 2006) ; FED. R. EVID. 501. But what law governs potential exceptions to and waivers of the privilege is less clear. Federal law can govern waiver in a diversity case, "even if state law provides the rule of decision." FED. R. EVID. 502(f) ; accord. Lee v. Med. Protective Co. , 858 F.Supp.2d 803, 807 (E.D. Ky. 2012). However, federal law does *751 so only when "disclosure" of the privileged communication is made, whether intentional or inadvertent, "in a federal proceeding." FED. R. EVID. 502(a)-(b), advisory committee's note ("[This] rule does not purport to supplant applicable waiver doctrine generally.").
None of the communications at issue in this case have been disclosed during discovery or otherwise during this federal proceeding. Those which have been disclosed-or more accurately, those which are already in Pinnacle's possession-have been so since before this lawsuit began. Federal Rule 502 therefore does not apply, and Kentucky law alone governs this attorney-client privilege dispute. E.g. Crestwood Farm Bloodstock LLC v. Everest Stables Inc. , No. 5:09-CV-317-KKC, 2011 WL 13156795, at *1 (E.D. Ky. Jan. 25, 2011).
B. The Attorney-Client Privilege Under Kentucky Law
Kentucky's "lawyer-client privilege" is set forth in the Kentucky Rules of Evidence. Haney v. Yates , 40 S.W.3d 352, 354 (Ky. 2000) ; accord. KRE 503. It protects confidential communications made "for the purpose of facilitating the rendition of professional legal services." KRE 503(b). "Whether a particular communication is privileged depends (absent waiver) ... on the facts and circumstances under which the communication was made." Lexington Pub. Library v. Clark , 90 S.W.3d 53, 59 (Ky. 2002). The privilege "should be strictly construed." Haney , 40 S.W.3d at 355. "[T]he party claiming the privilege ... must provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts." Collins v. Braden , 384 S.W.3d 154, 164-65 (Ky. 2012).
C. Joint Representation
Loehnert and Ayres previously left Wells Fargo to join Pinnacle. That move also spurred litigation, in which this case's Defendants jointly represented Pinnacle, Loehnert and Ayres. (DN 80-1, PageID # 780; DN 84, PageID # 1078.) Pinnacle argues that it should be allowed to access all of the Defendants' communications with Loehnert and Ayres from the period of joint representation. (DN 80-1, PageID # 798.)
The attorney-client privilege does not shield communications between one client and counsel from other joint clients. See KRE 503(d)(5) ; KY. SUP. CT. R. 3.130 (1.7 cmt. 30). A joint client may discover any communications that are "relevant to a matter of common interest between or among" the clients. KRE 503(d)(5). The party asserting this exception to the privilege bears the burden of establishing that it applies by a preponderance of the evidence. Stidham v. Clark , 74 S.W.3d 719, 727 (Ky. 2002).
The parties dispute exactly when the Defendants' joint representation of Pinnacle, Loehnert and Ayres ended. Pinnacle argues that the representation continued until June 4, 2014, "when the last settlement payment was made." (DN 80-1, PageID # 798-800.) In their motion to dismiss, the Defendants have conceded that the joint representation lasted at least until June 10, 2013, when "the lawsuit with Wells Fargo was settled and dismissed." (DN 57-2, PageID # 492, 500.)
The record in insufficient for the Court to determine precisely when the joint representation ended. But by the Defendants' conceded date of termination, Pinnacle may access all the Defendants' communications with Loehnert and Ayres made between the onset of the joint representation and June 10, 2013 which discuss matters of *752 common interest to this case's parties-whether they were made via Pinnacle's communication systems or any other platform. Such matters include, but are not limited to, Loehnert's and Ayres's relationships with Pinnacle. If any such communications are responsive to Pinnacle's discovery requests but are not yet in Pinnacle's possession, the Defendants must produce them.[2]
D. Waiver
It is undisputed that Loehnert and Ayres used Pinnacle's systems while employed there to communicate with the Defendants. (DN 80-1, PageID # 792; DN 84, PageID # 1085.) Pinnacle argues that they "waived any purported privilege" by doing so.[3] (DN 80-1, PageID # 792.) It is Pinnacle's burden to establish that waiver has occurred. Stidham , 74 S.W.3d at 727.
1. Kentucky's Consequence for Inadvertent Disclosure
Kentucky's rules of evidence only contemplate voluntary waiver. See KRE 509. Neither have the state's courts established a consequence-or even whether there is one-for inadvertent disclosure. See 1 KY Evidence Law Handbook § 5.05(6); Ky. Bar Ass'n., Eth. Op. E-374 2 (1995). However, elsewhere, the drafters of Kentucky's rules have stated that "a person who legally obtains possession through ... inadvertent disclosure will not be barred from testifying to the contents." Evidence Rules Study Comm., Ky. R. Evid. 52-53 (Final Draft 1989). Accordingly, Pinnacle may access all of the Defendants' communications with Loehnert and Ayres which Pinnacle lawfully possesses.
2. The Employees' Possible Waiver by Use of the Employer's Communication Systems
Most courts, including Kentucky's, have not articulated a rule for this exact situation.[4] But the United States Bankruptcy Court for the Southern District of New York has, and both sides have asked this Court to apply its reasoning. (DN 80-1, PageID # 792; DN 84, PageID # 1083.) That court considered "the analogous question of the employee's expectation of privacy in his office computer and the company e-mail system." In re Asia Global Crossing Ltd. , 322 B.R. 247, 256 (2005).
An employee's expectation of privacy in his office, desk and files may be reduced by virtue of actual office practices and procedures, or by legitimate regulation. In light of the variety of work environments, whether the employee has a reasonable expectation of privacy must be decided on a case-by-case basis.
...
*753 ... In general, a court should consider four factors: (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?
Id. at 256-57 (internal citations and quotation marks omitted).[5] Pinnacle has not established that any third parties had actual access to Loehnert's or Ayres's company emails. (See DN 80-4, PageID # 892.) However, the other three factors indicate that Loehnert and Ayres had no reasonable expectation of privacy in the communications they made via Pinnacle's systems. First, Pinnacle clearly prohibited personal use of its systems. Its Employee Handbook stated:
The communication systems are owned and operated by the Company and are to be used for the business of the Company. Employees should have no expectation of privacy of any correspondence, messages or information in the systems, regardless of the content or purpose of the same.
...
Personal use of the internet, including the sending and receiving of personal e-mails is prohibited while at work, except during the meal and break periods ....
(DN 80-4, PageID # 923-24.) Second, Pinnacle clearly monitored its employees' uses of its systems. The Handbook also stated:
The Company reviews, monitors and accesses all electronic content, keystrokes and messages sent or received for any purpose, regardless of whether messages are transmitted/received via the Company's e-mail system or the employee's personal e-mail account(s). All such messages, regardless of content or the intent of the sender, are a form of corporate correspondence, and are subject to the same internal and external regulation, security and scrutiny as any other corporate correspondence.... E-mail communications are official internal Company communications, which may be subject to summons in legal proceedings....
...
... The Company ... reserves the right to access, and will access an employee's messages and other electronic data at any time, without notice to the employee.
(DN 80-4, PageID # 923-24.) Third, both Loehnert and Ayres were aware of these use and monitoring policies. The Defendants have argued extensively that the Handbook did not apply to Loehnert and Ayres because they were not "California employees," were not at-will employees, and did not form any agreement permitting Pinnacle to access their emails. (DN 84, PageID # 1081, 1085; DN 92, PageID # 1180-81.) These arguments would be more persuasive if the issue was whether Pinnacle, Loehnert and Ayres formed a contract regarding access to communications. But it is enough that Pinnacle notified them of its policies and that they were aware of the same. Loehnert and Ayres both received copies of Pinnacle's policies, *754 and at least Ayres signed his Handbook's acknowledgment pages. (DN 84-1, PageID # 1166; DN 84-3, PageID # 1142-43.) Even if they believed that the "California" policies regarding use did not apply in the new Kentucky office-a belief which would prompt one to wonder why he has received a copy of them in the first place-they were aware that Pinnacle had the ability to monitor their use of its systems.
For these reasons, Pinnacle may access all of the Defendants' communications with Loehnert and Ayres which were made via Pinnacle's systems.
E. Crime-Fraud Exception
Pinnacle also argues that the Defendants' communications with Loehnert and Ayres are not privileged due to the crime-fraud exception. Kentucky's attorney-client privilege "does not apply to future transactions when the person seeking the advice is contemplating the committing of a crime or the perpetration of a fraud." Steelvest, Inc. v. Scansteel Serv. Ctr. , 807 S.W.2d 476, 487 (Ky. 1991) ; accord. KRE 503(d). For the purposes of Kentucky's crime-fraud exception, "a breach of a fiduciary duty is equivalent to fraud."[6] Steelvest, Inc. , 807 S.W.2d at 487. The party asserting this exception to the privilege must establish by a preponderance of the evidence that it applies.[7] Stidham , 74 S.W.3d at 727.
Loehnert's and Ayres's employment agreement certainly indicates that they were fiduciaries of Pinnacle. (See DN 53-1, PageID # 396-406.) The question is whether their communications with the Defendants contemplated any future breach of their corresponding fiduciary duties and therefore fall within Kentucky's crime-fraud exception.
Parties may ask courts to conduct in camera review "to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception." United States v. Zolin , 491 U.S. 554, 574, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) ; Stidham , 74 S.W.3d at 726-28 (adopting Zolin for Kentucky law). But to justify review, the requesting party must make "a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Id. at 572, 109 S.Ct. 2619. Even when this "threshold showing" is made, a court's decision of whether to conduct in camera review or not is discretionary. Id. at 572, 109 S.Ct. 2619.
This Court will not conduct in camera review under the crime-fraud exception for two reasons. First, Pinnacle has not requested it-in fact, Pinnacle has not even cited or discussed the Zolin or Stidham rule restated above. Pinnacle's whole-cloth request that the Court review everything in the Defendants' privilege logs for a "variety of reasons" (DN 93, PageID # 1320) is too generic. Second, this Order's other holdings could make *755 resolution of this issue unnecessary. Accordingly, the Court will not consider it further at this time.
F. Submissions for In Camera Review
Both sides have submitted select documents under seal for in camera review, not in response to the opposite's request, but "in accordance with" their own briefs. (DNs 81, 85, and 94.) These unusual requests are moot. The Court is able to rule on the parties' cross-motions without reviewing the contents of the communications at issue. Accordingly, the sealed documents will be stricken from the docket.
G. Use at Trial
Pinnacle's tendered proposed order would permit Pinnacle to use the documents it seeks during trial. (DN 80-9, PageID # 1056.) Likewise, the Defendants' motion requests "an Order in Limine excluding the introduction of all privileged communications between Loehnert, Ayres and their attorneys as evidence, as well as all argument and/or reference thereto by Pinnacle's counsel at trial." (DN 84, PageID # 1081-82.) These requests are premature. The motions are denied without prejudice to the extent that they seek any ruling on the admissibility of evidence at trial.
II. THE DEFENDANTS' PRIVILEGE LOGS
After a May 2018 telephonic status conference, the Court instructed the parties to produce privilege logs on or before May 31, 2018. (DN 78.) The Defendants have produced two privilege logs accordingly. (DNs 80-2 and 80-3.) In its motion to compel, Pinnacle also argues that the Defendants' privilege logs conceal documents which are not privileged. (DN 80-1, PageID # 803.) The logs invoke both the attorney-client privilege and the work product doctrine.
The attorney-client privilege is narrow: it only protects confidential lawyer-client communications made "for the purpose of facilitating the rendition of professional legal services. " KRE 503 (emphasis added). It does not protect, for example, business advice or discussion of employment contract negotiations. Lexington Pub. Library , 90 S.W.3d at 59-60 ; Invesco Institutional (N.A.), Inc. v. Paas , 244 F.R.D. 374, 389 (W.D. Ky. 2007) (applying Kentucky law). Accordingly, blanket assertions of the privilege and plain declarations that a recipient is an attorney are inadequate. Stidham , 74 S.W.3d at 725. The party asserting the privilege bears the burden of showing that it applies. Collins , 384 S.W.3d at 164-65.
Even in diversity cases, federal courts apply the federal work product doctrine. In re Powerhouse Licensing, LLC , 441 F.3d 467, 472 (6th Cir. 2006). The doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial. " FED. R. CIV. P. 26(b)(3)(A) (emphasis added). "Anticipation of litigation" must both subjectively exist when the document is prepared and be objectively reasonable. In re Professionals Direct Ins. Co. , 578 F.3d 432, 439 (6th Cir. 2009). "[A]n ordinary business purpose" does not suffice. Id. "[T]he burden is on the party claiming protection to show that anticipated litigation was the driving force behind the preparation of each requested document." Id. (internal quotation marks omitted).
It appears that many documents identified in the Defendants' privilege logs are unprotected and must be disclosed. Several communications' entries simply identify lawyers as correspondents and do not assert that they contain legal advice.
*756 See, e.g. , DN 80-2, PageID # 809-10, 816; DN 80-3, PageID # 859, 862, 877.) Other entries mention only business advice and contract negotiation. (See, e.g. , DN 80-2, PageID # 807, 809-15, 823-28, 830; DN 80-3, PageID # 846-49, 858-59, 861-68, 871-72, 884-88.)
Pinnacle's motion to compel requests that "all ... documents listed in Defendants' privilege logs ... be submitted and reviewed by the Court." (DN 80-1, PageID # 803.) Such extensive review would be unduly burdensome and is unnecessary. See Zolin , 491 U.S. at 571, 109 S.Ct. 2619 ; Collins , 384 S.W.3d at 164. It is clear from the privilege logs themselves that the Defendants must strike numerous entries, amend their discovery responses, and supplement their document productions.
III. REPLY OVER 15 PAGES
The Defendants have requested permission to file a reply brief in excess of the 15 pages permitted by Local Rule 7.1(d). (DN 96.) Pinnacle has not filed a response. The Defendants' request presumably pertains to their reply brief on the parties' discovery cross-motions, which is 19 pages long. (See DN 98.) As Pinnacle did not object, the motion will be granted.
IV. THE CASE SCHEDULE
The parties have filed an "agreed motion to amend the scheduling order." (DN 101.) The motion indicates that depositions have not been scheduled due to the attorney-client privilege dispute resolved by this Order. But under the current case schedule, the parties will still have approximately four months from the date of this Order to conduct fact discovery. (See DN 83.) Accordingly, the joint motion will be denied without prejudice.
V. AGREED PROTECTIVE ORDER
The parties have filed a proposed "Agreed Protective Order." (DN 105.) To receive a protective order, a party or person from whom discovery is sought must certify that he or she has, in good faith, conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. FED. R. CIV. P. 26(c)(1). In such circumstances, a court may enter a protective order for good cause. Id.
Here, entry of a protective order is neither appropriate nor necessary. The parties have agreed to certain limitations on the use of materials produced in discovery. Their proposed order contains no certification of the type required by Rule 26(c)(1), nor could it under these circumstances. The parties have not shown good cause for entrance of their proposed order. Absent some dispute requiring the Court's intervention, the parties may simply document the terms of their agreement and proceed with discovery.
Accordingly, IT IS HEREBY ORDERED as follows:
1) Pinnacle's motion to compel (DN 80) is GRANTED IN PART and DENIED IN PART . The Defendants SHALL amend their discovery responses in compliance with this Order.
2) The Defendants' motion for a protective order (DN 84) is DENIED .
3) The parties' motions for leave to seal documents (DNs 81, 85, and 94) are DENIED . The Clerk of Court is DIRECTED to strike the parties' sealed documents (DNs 82, 86, 87, and 95) from the record.
4) The Defendants SHALL revise their privilege logs in compliance with this Order.
*757 5) The Defendants' motion for leave to file a reply in excess of 15 pages (DN 96) is GRANTED.
6) The parties' joint motion to amend the scheduling order (DN 101) is DENIED without prejudice.
7) The parties' joint proposal for an agreed protective order (DN 105) is DENIED .

Pinnacle has asked the court to strike the Defendants' motion for a protective order because the Court did not permit them to file it. (DN 93, PageID # 1304-05.) Ordinarily, the argument would be well-taken; this Court routinely requires parties to conduct a joint telephonic status conference with the Magistrate Judge before filing any motion pertaining to discovery. The Court certainly anticipated receiving a single motion to compel, not cross-motions on the issue of attorney-client privilege, when it issued its May 22, 2018 order (DN 78). However, the ordinary pre-motion conference requirement has not been docketed in this case. Under these circumstances, the Court will accept and consider the Defendants' motion.

In its response brief, Pinnacle presented a similar argument from Kentucky Rule of Evidence 503(d)(3). (DN 93, PageID # 1317.) The possible consequences of that argument wholly overlap with those of this joint representation argument, and it will not be addressed separately.

Pinnacle also argues, without citation to any authority, that Loehnert, Ayres and the Defendants waived the attorney-client privilege simply by not mentioning it sooner. (DN 80-1, PageID # 786; DN 93, PageID # 1312-13; DN 97, PageID # 1528.) That argument is meritless.

A dearth of on-point case law is no excuse for misrepresenting precedent to the Court. The Defendants have cited a Sixth Circuit opinion which hardly supports their stated proposition (DN 84, PageID # 1082), a Fifth Circuit opinion without disclosing that it is vacated (PageID # 1084), and a case from the Southern District of New York while purporting to present what "Kentucky courts have held" (DN 98, PageID # 1602). The parties are cautioned to remember that they must be accurate and transparent with their citations.

This Court may apply the bankruptcy court's reasoning to the extent that it is not inconsistent with Kentucky law. There is only one inconsistency: which party bears the burden of proof regarding waiver. Compare Asia Global Crossing, Ltd. , 322 B.R. at 255 (under federal law, the party asserting privilege) with Stidham , 74 S.W.3d at 727 (under Kentucky law, the party asserting waiver).

The Defendants dispute this equivalence. (DN 92, PageID # 1186.) But courts have not subsequently curtailed it as they claim-they simply have not extended it to other contexts. See Bariteau v. PNC Fin. Servs. Grp., Inc. , 285 F. App'x 218, 223 (6th Cir. 2008) (discovery rules); Anderson v. Old Nat'l Bancorp , 675 F.Supp.2d 701, 712 (W.D. Ky. 2009) (bad faith); Gundaker/Jordan Am. Holdings, Inc. v. Clark , No. 04-226-JBC, 2009 U.S. Dist. LEXIS 69530, at *19 (E.D. Ky. Aug. 3, 2009) (punitive damages).

There has been no judicial determination of this issue. Pinnacle's claims against Loehnert and Ayres for breach of fiduciary duties settled in 2016. See Pinnacle Surety Services, Inc. v. Loehnert et al. , No. 3:14-cv-00425-JHM-CHL (W.D. Ky.).