RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

In re: POWERHOUSE LICENSING, LLC; POWERHOUSE MARKS, LLC; DABISH FAMILY TRUST; DABISH BROTHERS BUSINESS TRUST; HENRY DABISH; WILLIAM DABISH, JR.; DALALY DABISH; NORMAN DABISH; POWERHOUSE MERCHANDISING, LLC; DABISH BROTHERS REAL ESTATE HOLDINGS, LLC; POWERHOUSE GYM CONSULTANTS, LLC; DABISH BROTHERS GROUP, LLC,

          *Petitioners.*

No. 05-2327

>

On Petition for Writ of Mandamus and
On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-72653—Bernard A. Friedman, Chief District Judge.

Argued: January 31, 2006

Decided and Filed: March 2, 2006

Before: MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.

—————————

## COUNSEL

**ARGUED:** Allan S. Rubin, LAW OFFICE OF ALLAN S. RUBIN, Southfield, Michigan, for Petitioners. Kenneth M. Schneider, SCHNEIDER, MILLER & LIM, Detroit, Michigan, for Respondent.

—————————

## OPINION

—————————

ALAN E. NORRIS, Circuit Judge. Petitioners consist of individuals and corporate entities who are defendants in a diversity action currently pending in the Eastern District of Michigan. In that suit, plaintiff Venice Renaissance, LLC, alleges that petitioners participated in fraudulent asset transfers in order to avoid paying a $1 million judgment rendered by a California court. In the course of the litigation below, Venice Renaissance sought to take the deposition of an attorney involved in structuring the disputed transactions. Over the objection of petitioners, the district court ordered that the deposition proceed; further, it ordered that documents, which petitioners claim are privileged, be produced in conjunction with that deposition. This petition for a writ of mandamus asks us to vacate the order of the district court. For the reasons that follow, we deny the petition.

1

## I.

In this mandamus action, this matter stems from a landlord-tenant relationship that went sour. In 1997, Powerhouse Gym's Venice, Inc., entered into a lease with a predecessor-in-interest of Venice Renaissance. The lease was guaranteed by Powerhouse Gyms International, Inc., and one of its principals, William Dabish. After a dispute arose over the use of certain portions of the leased property, Powerhouse Gym's Venice filed suit in a California court against Venice Renaissance for breach of its lease obligations. Resort to the courts proved to be ill-advised: Venice Renaissance filed a counterclaim that led to the $1 million judgment referenced earlier.

In 1999, the year prior to the lease dispute, Powerhouse Gyms International and two related companies – Powerhouse Products, Inc., and Powerhouse Body Building Gyms, Inc. – sold certain assets to three newly formed companies: Powerhouse Licensing, LLC, Powerhouse Marks, LLC, and Powerhouse Merchandising, LLC. On July 11, 2003, Venice Renaissance filed the instant diversity suit, alleging that the California judgment debtors engaged in fraudulent transfers of property for the purpose of hindering collection of the judgment, which had been entered on November 26, 2001. According to the complaint, these and other transfers were fraudulent under Michigan law. Mich. Comp. Laws §§ 566.34, 566.221. A second suit, filed by New Market Acquisitions, Limited ("New Market"), was consolidated with the one now before us based upon the similarity of the claims. It has subsequently been settled and dismissed.

With this by way of background, we turn to the matter before us. Attorney Philip J. Shefferly[1] assisted in the disputed transactions as a partner of the law firm Shefferly, Silverman & Morris (now Silverman & Morris). Specifically, he represented the newly formed companies that purchased the assets in question. Shortly before the close of discovery, New Market served a subpoena and discovery requests upon Shefferly's former firm, seeking non-privileged documents in its possession. These documents were produced.

After discovery was concluded, Venice Renaissance and New Market moved for summary judgment. In a memorandum filed in response, petitioners implied that the transactions could not have been fraudulent, in part because they were undertaken on the advice of counsel:

> [T]o claim that the transactions were concocted for the purpose of defrauding creditors not only attacks the integrity of the transferees and transferors, but attacks the integrity of the attorneys and accountants that represented the parties in the transactions.

In further support of their position, petitioners attached an affidavit from Shefferly. Among other matters, he stated that "[b]ecause the owners of the Transferor Entities were related to the owners of the Transferee Entities, the parties desired to have an expert valuation of the assets to be acquired performed by an independent financial expert." To that end, they retained Mauricio Kohn who, according to Shefferly, determined a fair market value for the assets, which was then used as the purchase price. Finally, Shefferly averred, "I am not aware of any actions taken by either the Transferor Entities or the Transferee Entities to conceal either the existence of the Acquisition, or the documentation of the Acquisition, from third parties."

Based upon the affidavit, New Market concluded that petitioners had waived the attorney-client privilege. It filed a motion to take Shefferly's deposition and to compel production of documents withheld by his former firm on the basis of privilege. The district court entered an order two weeks later allowing plaintiffs to depose Shefferly and directing the law firm to submit a

---

[1]Mr. Shefferly has since become a judge of the United States Bankruptcy Court for the Eastern District of Michigan.

privilege log.  After the log was filed, New Market moved to compel the production of the listed documents; Venice Renaissance joined in the motion.  After petitioners objected, the matter was referred to a magistrate judge who scheduled a hearing for August 15, 2005.

By the time of the hearing, New Market had settled its claims with petitioners.  Although Venice Renaissance had not issued its own subpoena, the magistrate judge deemed the subpoena issued by New Market "applicable to Venice Renaissance because . . . the requirement of issuing a new identical subpoena . . . would elevate form over substance."  In so ruling, the court allowed the parties to address the extent, if any, of the waiver of privilege occasioned by the use of the affidavit.

After the magistrate judge noted that the document request by Venice Renaissance "seems somewhat overly broad because is doesn't seem to be limited in time," counsel for Venice Renaissance indicated that an attempt would be made to narrow the request.  After hearing argument from counsel, the magistrate judge entered an order granting in part the motion to compel based upon the following findings:

1)      New Market's subpoena is deemed applicable to Venice Renaissance  LLC.

2)      Both counsel have agreed upon a narrower form of the subpoena.

3)      Judge Friedman has previously ordered the deposition of Phil Shefferly to proceed and previously denied defendants' motion for summary judgment.

4)      Plaintiff's counsel requests the documents related to the transfers and establishments of the trust in order to conduct the deposition.

5)      Court finds that the affidavit and related disclosures constitute a waiver of the attorney-client privilege.

6)      It is impossible to say on the record currently before the court the exact parameters of disclosure necessary to conduct an effective deposition.

Order Granting in Part Plaintiff's Motion to Compel, August 15, 2005 at 2.  The magistrate judge concluded by ordering the documents produced within five days of  the Shefferly deposition.  Petitioners filed objections and moved to stay the order.  On September 27, 2005, the district court entered an order affirming the magistrate judge.

Petitioners now seek a writ of mandamus from this court directing the district court to vacate its orders permitting the deposition of Shefferly and compelling the production of documents.  They also seek certification of an appeal pursuant to 28 U.S.C. § 1292(b).[2]

## II.

As this court has repeatedly recognized, "mandamus relief is an 'extraordinary remedy' that should be utilized only infrequently. This extraordinary remedy is usually reserved for 'questions of unusual importance necessary to the economical and efficient administration of justice,' or

---

[2]The district court denied defendants' motion for § 1292(b) certification on October 12, 2005.  Certification of an order under § 1292(b) is discretionary with the district court and is not subject to review.  "When there is extraordinary need for review of an order before final judgment and the District Court has refused to certify the issue pursuant to § 1292(b), this Court has authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651." *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005), *petition for cert. filed*, (U.S. Jan. 27, 2006) (No. 05-962).  We therefore deny the request for certification and proceed exclusively under the All Writs Act.

'important issues of first impression.'" *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005) (quoting *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982)), *petition for cert. filed*, (U.S. Jan. 27, 2006) (No. 05-962). With this in mind, we have suggested that the district court employ a multi-faceted test in order to determine if the petition qualifies as suitably extraordinary:

> (1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.
>
> (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)
>
> (3) The district court's order is clearly erroneous as a matter of law.
>
> (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
>
> (5) The district court's order raises new and important problems, or issues of law of first impression.

*In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984) (quoting *Bauman v. United States District Court*, 557 F.2d 650, 654-55 (6th Cir. 1977)). Moreover, we have recognized that all of the factors will rarely point in a single direction; instead the district court should attempt to balance them against one another. *Id.*; *see also In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996). In short, a "flexible rather than a rigid approach" is needed. *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997) (quoting *Chimenti*).

A district court's decision regarding the waiver of the attorney-client privilege is reviewed *de novo*. *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997). In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *see also* Fed. R. Evid. 501; *Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990).

*A. Attorney-Client Privilege*

In the present case, the first and second factors weigh in favor of petitioners because they have no other readily available means of relief from the orders at issue, and an appeal after the disclosure of privileged communication is an inadequate remedy. *See In re Spaulding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000). The remaining factors concern the merits of the orders themselves and the relative importance of the issued raised to the wider legal landscape.

"Michigan has long recognized the common-law privilege extending to communications between a client and an attorney." *Sterling v. Keidan*, 412 N.W.2d 255, 256 (Mich. App. 1987). Venice Renaissance concedes that the attorney-client privilege may be invoked with regard to the information at issue, but maintains that the petitioners waived that privilege when they interjected Shefferly's knowledge of otherwise confidential communications respecting the transactions into their defense. When a client offers his or her attorney's testimony as to a specific communication to the attorney, "the privilege is waived as to all communications to the attorney on the same matter." *Kubiak v. Hurr*, 372 N.W.2d 341, 345 (Mich. App. 1985).

Petitioners insist that they have not disclosed their confidential communications to counsel. According to them, the Shefferly affidavit merely discloses the "facts" surrounding the challenged transactions. *See Fruehauf Trailer Corp. v. Hagelthorn*, 528 N.W.2d 778, 780 (Mich. App. 1995) ("[T]he protection of the privilege extends only to communications and not to facts.") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981)). "Michigan has long recognized that a party does

not waive the attorney-client privilege by presenting his or her attorney as a witness to testify regarding matters not communicated by the client." *People v. Squire*, 333 N.W.2d 333, 336 (Mich. App. 1983) (citing cases). While we do not question these legal propositions, in our view Shefferly's affidavit disclosed more than mere facts. For instance, it contains the following statement cited earlier:

> Because the owners of the Transferor Entities were related to the owners of the Transferee Entities, the parties desired to have an expert valuation of the assets to be acquired performed by an independent financial expert.

This assertion, along with opinion expressed in the affidavit concerning whether the participants intended to "conceal either the existence of the Acquisition, or the documentation of the Acquisition from third parties," relates directly to Venice Renaissance's allegation that the petitioners intended to hinder, delay, and defraud their creditors. Moreover, the substance of these statements could only have been gleaned by Shefferly through communications from his clients.

The district court's order was not "clearly erroneous as a matter of law." *Bendectin*, 749 F.2d at 304. The decision to include Shefferly's affidavit represents a litigation strategy fraught with obvious risks; surely, counsel must have realized that it would be "pushing the envelope" with respect to the attorney-client privilege to introduce an affidavit from an attorney intimately involved in structuring the very transactions alleged to have been fraudulent. Presumably, a conscious decision was made that the rewards outweighed the risks. In the end, perhaps they will. However, we find that certain statements contained in the affidavit represented opinions, based upon confidential communications between attorney and client, that go to the heart of the legal claims at issue. By including these communications in the affidavit, counsel for petitioners effectively waived the attorney-client privilege.[3]

*B. Work Product*

We turn now to the question of what documents in the possession of Shefferly's former law firm Venice Renaissance is entitled to review in preparation for his deposition. As noted earlier, the law firm produced a privilege log, and counsel for Venice Renaissance assured this court during oral argument that his client seeks only those documents listed in the log. Thus, the specter that petitioners suggest of an unrestrained fishing expedition on the part of Venice Renaissance is unfounded. In its response to the petition for a writ of mandamus, Venice Renaissance set forth precisely the scope of its request:

> Respondent does not argue that privilege was waived with respect to anything except for Petitioners disclosures made in connection with the transactions at issue in this matter. Specifically, Petitioners have waived the attorney-client privilege on any and all communications documents and other related information in connection with Mr. Shefferly's representation of Petitioners in the transactions at issue.

Response, Oct. 7, 2005, at 7.

It is axiomatic that the purpose of the work-product doctrine is to allow an attorney "to assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice

---

[3] Although we find the third *Bendectin* factor – whether the district court committed clear legal error – militates overwhelmingly in favor of denial of the writ in this particular case, we recognize that the scope of the attorney-client privilege implicates the kind of important interests that would normally favor mandamus. *See generally In re Lott*, 424 F.3d at 449-51.

and to protect [his] clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  A five-step analysis is used in judging whether the work product doctrine applies.  *See Toledo Edison Co. v. G.A. Tech., Inc.*, 847 F.2d 335, 339 (6th Cir. 1988); Fed. R. Civ. P. 26(b); *see also Guardsmark, Inc. v. Blue Cross*, 206 F.R.D. 202, 206-07 (W.D. Tenn. 2002).  Once the party requesting discovery establishes relevance, the objecting party has the burden of showing that the material was "prepared in anticipation of litigation or for trial." *Toledo Edison* at 339.  If that burden is not met, the court's inquiry ends and the documents must be produced. *Id.*

As Venice Renaissance points out, the representation undertaken by Shefferly's former firm related to the transfer of assets and occurred before the complaint in the instant case was filed.  At no time has the firm represented petitioners  during the litigation now pending in the district court and it is therefore difficult to credit the contention that the documents requested were prepared with an eye towards this litigation.  Moreover, as already stated, counsel for petitioners elected to interject Shefferly into these proceedings and thereby waived the attorney-client privilege.  In so doing, the work product privilege was waived as well. *See In re Columbia/HCA Corp.*, 293 F.3d 289, 306 (6th Cir. 2002) ("there is no compelling reason for differentiating waiver of work product from wavier of attorney-client privilege").  Even if we were to find that the documents at issue were prepared in anticipation of litigation, therefore, they would still be subject to production.

**III.**

The petition is **denied**.