*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES ex rel. POGUE,

        *Plaintiff-Appellee,*

    *v.*

DIABETES TREATMENT CENTERS OF AMERICA, INC., et al.,

        *Defendants,*

HCA, INC. and WEST PACES MEDICAL CENTER,

        *Appellants.*

No. 04-6130

─────────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-03298—Royce C. Lamberth, District Judge.

Argued: September 14, 2005

Decided and Filed: April 11, 2006

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Richard P. Bress, LATHAM & WATKINS, Washington, D.C., for Appellants. Bruce J. McKee, HARE, WYNN, NEWELL & NEWTON, Birmingham, Alabama, for Appellee. **ON BRIEF:** Richard P. Bress, LATHAM & WATKINS, Washington, D.C., Steven A. Riley, Amy Jo Everhart, BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellants. James B. Helmer, Jr., HELMER, MARTINS, RICE & POPHAM CO., Cincinnati, Ohio, for Appellee.

    GIBBONS, J., delivered the opinion of the court, in which CLAY, J., joined. GRIFFIN, J. (pp. 11-14), delivered a separate opinion concurring except as to Section II B.

─────────────────

## OPINION

─────────────────

    JULIA SMITH GIBBONS, Circuit Judge. Appellants West Paces Medical Center ("West Paces") and HCA, Inc. ("HCA") appeal a discovery order issued by the United States District Court for the District of Columbia in the case of *United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.* Plaintiff-appellee Scott Pogue brought suit under the False Claims Act, 31 U.S.C.

1

§ 3729 *et seq.*, alleging that various financial incentive arrangements between health care providers and referring physicians violate federal law. Pogue's case was filed in the United States District Court for the Middle District of Tennessee (the "Tennessee district court"). On October 26, 2000, the *Pogue* case was transferred by the Judicial Panel on Multi-District Litigation ("JPMDL"), along with related cases from at least ten other districts, for consolidated pretrial proceedings before Judge Royce C. Lamberth in the United States District Court for the District of Columbia (the "D.C. district court").

West Paces, a hospital, was one of the original defendants in the *Pogue* case, but had the claims against it dismissed on May 27, 2004, pursuant to a settlement agreement. The *Pogue* case continues, however, against Diabetes Treatment Centers of America, Inc. ("DTCA"). HCA, a health care provider with approximately 191 affiliated hospitals worldwide, wholly owns West Paces. Pogue maintains that both West Paces and other HCA-owned hospitals maintained illegal relationships with DTCA. In addition to being the corporate parent of West Paces and the corporate parent of other hospitals allegedly connected to DTCA, HCA is itself a party defendant in many of the other multi-district litigation ("MDL") cases that have been consolidated before Judge Lamberth along with the *Pogue* case. The consolidated litigation is collectively captioned *In re Columbia/HCA Healthcare Corp. Qui Tam Litigation*, No. 10-MS-50 (JPMDL No. 1307). Despite these connections, HCA has never technically been a party to the *Pogue* case.

During discovery, HCA inadvertently disclosed certain documents to Pogue. Before Pogue could copy the documents, however, HCA recovered them and asserted that it would not reproduce them because they were privileged attorney-client communications. The district court's order, which forms the basis of this appeal, compels HCA to turn over to Pogue the previously disclosed documents and further orders that any privilege over the subject matter of the disclosed documents has been waived.

For the following reasons, we dismiss the appeal for lack of jurisdiction.

I.

On February 20, 2002, Pogue served a subpoena duces tecum on HCA, which is headquartered in Nashville, Tennessee. Because Pogue sought to inspect HCA documents in Brentwood, Tennessee, the documents-only subpoena issued from the Tennessee district court.[1] After the parties failed to agree on the scope of the production that would occur pursuant to the subpoena, Pogue moved to enforce the subpoena in the D.C. district court. HCA filed a short response to Pogue's motion, asserting that the D.C. district court lacked jurisdiction to enforce the subpoena duces tecum because only the issuing court may enforce a subpoena. HCA informed Judge Lamberth that it would move the Tennessee district court to quash the subpoena.

HCA then filed a motion to quash in the Tennessee district court. In its supporting memorandum, HCA argued that the Tennessee district court was the most appropriate forum to rule upon its motion to quash. Pogue filed a response, opposing the motion, in part, on the grounds the MDL court was the most appropriate forum to enforce, modify, or quash the subpoena. On November 21, 2002, the Tennessee district court issued an order finding that it lacked jurisdiction

---

[1]We briefly note, so as to avoid any unnecessary confusion, that the propriety of the Tennessee district court's issuance of the subpoena is not in any way connected to the fact that the *Pogue* case was originally filed in the Tennessee district court. The issuance of the subpoena duces tecum by the Tennessee district court was proper pursuant to Fed. R. Civ. P. 45(a)(2)(C), which states, "A subpoena must issue . . . for production and inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made."

to consider HCA's motion to quash. The Tennessee district court held that a motion to quash a subpoena issued in a case that has been transferred for MDL proceedings must be decided by the MDL court, because the motion to quash is part of the consolidated pretrial proceedings. HCA did not appeal the Tennessee district court's order.

After the Tennessee district court denied HCA's motion to quash, HCA refiled the motion in the D.C. district court. Pogue then refiled his response to HCA's motion to quash, as well as the Tennessee district court's order. Thus, the D.C. district court effectively had before it all of the documents filed with or issued by the Tennessee district court.

In a memorandum opinion and order issued on December 18, 2002, Judge Lamberth found that he had jurisdiction to rule on Pogue's motion to compel compliance with the subpoena. *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.*, 238 F. Supp. 2d 270, 273 (D.D.C. 2002). Finding that HCA's motion to quash the subpoena was untimely, failed to comply with the local rules of the district in which it was filed, and failed to satisfy the signature requirement of Fed. R. Civ. P. 7(b)(3), Judge Lamberth held that HCA had failed to challenge the merits of Pogue's motion to compel. Judge Lamberth issued an order enforcing the subpoena duces tecum as written. *Id.* at 278-79. In another memorandum opinion also issued on December 18, which concerned the progress of discovery, Judge Lamberth stated that he trusted that HCA's response to the discovery orders would take place within the month.

HCA began producing boxes of documents pursuant to the subpoena duces tecum and the D.C. district court's order enforcing the subpoena on January 6, 2003. Pursuant to prior protective orders issued by the D.C. district court, Pogue's counsel would review and mark for copying documents of interest, at which point counsel for HCA would screen the marked documents for confidentiality and patient confidentiality. On February 11, 2003, HCA produced 399 additional boxes of documents. During its review of these boxes, Pogue's counsel identified and marked for copying various documents. Pogue's counsel also took notes memorializing one such document – a letter from HCA attorney Richard Knight to Joe Calcutt, the Chief Financial Officer of West Paces. The Knight letter discussed a loan from West Paces to a physician. Later that day, during the protective-order review of the documents marked for copying, HCA contract attorneys discovered both the Knight letter, on which Pogue's counsel had taken notes, as well as one other similar letter. The HCA attorneys removed these documents from the boxes to be copied. The next day, HCA's counsel sent an email to Pogue's counsel, indicating that the documents marked for copying had been reviewed "for confidentiality and patient confidentiality" and were ready to be picked up for copying. HCA did not inform Pogue that it had removed any documents from the boxes.

Upon additional review of the boxes that were ready for copying, Pogue's counsel discovered that the Knight letter had been removed. Pogue's counsel immediately faxed a letter questioning HCA's counsel about the removal. HCA's counsel then confirmed that the Knight letter, as well as one other letter that had been marked for copying, had been removed subsequent to Pogue's review of the documents. HCA's counsel asserted that the two letters, which HCA claimed were produced inadvertently, had been removed from the copying boxes because they were protected by the attorney-client privilege. Counsel for Pogue and HCA exchanged letters. Generally, Pogue's counsel argued that any privilege had been waived and the documents must be returned to the boxes. HCA's counsel argued that the privilege had not been waived by the inadvertent disclosure and that the documents would not be returned.

Pogue moved the D.C. district court to compel production of the documents removed from the copying boxes and for sanctions. On May 18, 2004, Judge Lamberth found that the inadvertent disclosure of the documents effected a waiver of any attorney-client privilege that might have protected their disclosure. Judge Lamberth also held, under the precedent of the D.C. Circuit, that

the scope of the waiver included all communications relating to the same subject matter. Accordingly, Judge Lamberth entered an order compelling HCA to produce the removed letters and any other communications relating to the same subject matter. Defendant HCA filed a motion to alter or amend the order, which the district court denied. HCA filed a timely notice of appeal.

II.

The substantive questions underlying this appeal are whether the inadvertent disclosure of the allegedly protected documents constitutes a waiver of the attorney-client privilege and, if it does, what is the scope of such a waiver. The parties also dispute whether Judge Lamberth should have applied D.C. Circuit or Sixth Circuit precedent on inadvertent disclosures in deciding these issues. Before we might address these questions, however, we must determine whether we are the correct court to review this order and, if so, whether we may review it at this time. Although we conclude that this appeal was taken to the correct court of appeals under 28 U.S.C. §§ 1294 and 1407; we hold, in accordance with 28 U.S.C. § 1291, that the order is not reviewable at this time.

A.

The MDL statute, 28 U.S.C. § 1407, allows for the transfer of civil actions that are pending in different districts to a single district for coordinated or consolidated pretrial proceedings if the cases involve one or more common questions of fact. 28 U.S.C. § 1407(a). Although the MDL statute does not address which appellate court is the proper appellate forum for appeals from an MDL court's pre-trial orders, the general rule is that appeals from reviewable decisions of a district court are taken to the court of appeals for the circuit embracing that district. *See* 28 U.S.C. § 1294. Appeals from pre-trial orders issued by an MDL court are ordinarily no different; these appeals typically go to the appellate court embracing the MDL district court. *See In re Corrugated Container Antitrust Litig.*, 662 F.2d 875, 880 (D.C. Cir. 1981); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 494-95 (Jud. Pan. Mult. Lit. 1968); *see also In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 116-18 (6th Cir. 1981).

When the MDL court's order that is being appealed compels some discovery action by or imposes a discovery sanction on a nonparty located in a foreign district, however, our analysis is different. As the Fifth and D.C. circuits held in the *Corrugated Container* cases, appeals from orders holding a nonparty deponent in contempt go to the circuit court of appeals embracing the deposition or discovery district. *See* 662 F.2d at 880-81; *In re Corrugated Container Antitrust Litig.*, 620 F.2d 1086, 1090-91 (5th Cir. 1980). *Accord In re Corrugated Container Antitrust Litig.*, 644 F.2d 70, 74 n.6 (2d Cir. 1981); *In re Corrugated Container Antitrust Litig.*, 655 F.2d 748, 750 n.2 (7th Cir. 1981). Although this court has never explicitly considered the analysis underpinning the *Corrugated Container* decisions, we find the reasoning, which we explain in the following two paragraphs, persuasive.

Pretrial proceedings in MDL cases operate pursuant to both Section 1407 and the Federal Rules of Civil Procedure. Therefore, we start by examining discovery involving nonparties under the Federal Rules in general. A subpoena to depose a nonparty witness or for document production from a nonparty must issue from the court for the district where the deposition will be taken or the production will be made. Fed. R. Civ. P. 45(a)(2)(B)-(C). Moreover, any disputes that arise over the subpoena of a nonparty are decided by the court that issued the subpoena. *See* Fed. R. Civ. P. 45(c)(2)(B) ("If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued."). The power to quash or modify the subpoena likewise resides with the issuing court. *See* Fed. R. Civ. P. 45(c)(3)(A). In addition, a nonparty witness cannot be compelled to travel more than 100 miles from where the witness resides, is employed, or regularly transacts

business in person to comply with the subpoena.  *See* Fed. R. Civ. P. 45(c)(3)(A)(ii).  With regard to the district court's enforcement authority, the Federal Rules provide that a motion to compel discovery or disclosure by a nonparty must be made to the court in the district where the discovery is being taken.[2]  Fed. R. Civ. P. 37(a)(1).  Finally, a nonparty that refuses to comply with such an order is thereby in contempt of and subject to sanctions by the court that issued the order.[3]  Fed. R. Civ. P. 37(b)(1).  Thus, the Federal Rules are designed to ensure that district courts remain firmly in control of those depositions and document productions involving nonparties located in their districts.

Because these rules could hamstring an MDL court's ability to conduct coordinated pretrial proceedings over cases that have been consolidated from far-flung foreign districts, the MDL statute empowers an MDL judge to act as a judge of the deposition or discovery district.  *See* 28 U.S.C. § 1407(b) ("The judge or judges to whom such [MDL] actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.").  A judge presiding over an MDL case therefore can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted.[4]  However, because the MDL judge is acting as a judge of the deposition or discovery district when he uses the authority outlined in Section 1407(b), appeal from the exercise of such authority lies in the circuit court embracing that deposition or discovery district.

In this case, Judge Lamberth acted as a judge of the Tennessee district court when he issued the order compelling HCA to return the inadvertently disclosed documents.  Indeed, Judge Lamberth expressly invoked the authority of the Tennessee district in the order that enforced the subpoena in the first instance, stating that the D.C. district court was "act[ing] as a Court of the Middle District of Tennessee in regard to the subpoena duces tecum issued by [Pogue] to HCA . . . ."  *Id.* at 279.  The accompanying memorandum opinion likewise states that "this Court finds that it has jurisdiction to entertain [Pogue]'s motions to compel compliance with his subpoenas duces tecum as a judge of the Middle District of Tennessee."  *Pogue*, 238 F. Supp. 2d at 273.  Although Section 1407(b) empowered him to do so, appeal from this decision and order lies in the circuit court of appeals embracing the discovery district.  Judge Lamberth acknowledged this too, stating that "appeal goes to the circuit of the district in which the deposition is being taken because of the 'need for uniformity in decisions on depositions within each of those circuits.'"  *Pogue*, 238 F. Supp. 2d at 276 (quoting *Corrugated Container*, 662 F.2d at 881 n.11).  Our decision that we are the proper appellate court to review the order under Sections 1294 and 1407 is therefore consistent with Judge Lamberth's previous decisions in this case and the parties' reasonable expectations.

---

[2] In contrast to the procedure for compelling production by a nonparty, "[a]n application for an order to a party shall be made to the court in which the action is pending."  Fed. R. Civ. P. 37(a)(1).

[3] In contrast, "[i]f a party or an officer, director, or managing agent of a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . ."  Fed. R. Civ. P. 37(b)(2).

[4] An argument can be made that Section 1407(b)'s grant of authority to the MDL judge to oversee nonparty discovery occurring outside the MDL district does not extend to enforcement of documents-only subpoenas.  *See VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002).  Section 1407(b) gives the transferee court the power to "exercise the powers of a district judge in any district for the purposes of conducting pretrial *depositions*." (emphasis added).  We agree with both the Tennessee and D.C. district courts that the rationale underlying the MDL statute of "just and efficient" resolution of pretrial proceedings requires the conclusion that Section 1407(b)'s grant of authority applies to both deposition subpoenas and documents-only subpoenas.

Pogue makes a number of arguments asserting why this court lacks jurisdiction to hear HCA's appeal under Section 1294. Pogue first argues that the D.C. Circuit is the appropriate court to hear the appeal because the Tennessee district court previously dismissed HCA's motion to quash for lack of jurisdiction and HCA chose not to seek review of that decision in this court. According to Pogue, the Tennessee district court's decision to dismiss the motion to quash without prejudice for jurisdictional reasons, which HCA did not challenge, is the law of the case. Similarly, Pogue argues that HCA's elective filing of its motion to quash in the D.C. district court, which followed the Tennessee district court's dismissal of the motion, thereby waived this court's jurisdiction on appeal.

These arguments by Pogue largely depend on an unwillingness to accept Section 1407(b)'s directive that an MDL judge may act as a judge of the deposition district court, as Judge Lamberth did in this case. We also note, however, that none of the events leading up to Judge Lamberth's exercising his authority under Section 1407(b) divested jurisdiction from this court. The Tennessee district court's jurisdictional ruling did not limit our jurisdiction on appeal. Nor did the Tennessee district court try to do so; rather, it stated, "*this District* lacks the jurisdiction to consider the motion to quash the subpoena *duces tecum*."**5** We also do not see how HCA's litigation strategy – either its filing the motion to quash in the Tennessee district court or its defending the motion to enforce in the D.C. district court – can define this court's jurisdiction over an appeal under Section 1294.

Pogue's other arguments generally press the notion that HCA, although not a party, is a unique type of nonparty deponent. According to Pogue, HCA was the "*raison d'etre*" and the "animating force" for the MDL proceedings. It is true that HCA was a party to other litigation consolidated before Judge Lamberth. HCA also owns West Paces, one of the original defendants in the *Pogue* case. Judge Lamberth's order, however, clearly refers to HCA as a nonparty. *Pogue*, 238 F. Supp. 2d at 279-80. Whatever connections may exist between HCA and the *Pogue* case or the larger MDL litigation, HCA is plainly not a party to the *Pogue* case. As a nonparty compelled to produce disclosed documents, HCA correctly appealed to the circuit court of appeals embracing the deposition district.

---

**5**Our review of the caselaw leads us to conclude that there is no settled answer to the question of whether, in light of the ongoing MDL proceedings, the Tennessee district court should have dismissed the motion on jurisdictional grounds or merely abstained from deciding the motion as a practical matter. A number of other courts have endorsed the latter procedure. In *In re Orthopedic Bone Screw Prods. Liability Litigation*, the Seventh Circuit declined to provide mandamus relief to nonparty deponents whose applications for protective orders had been transferred from the (Wisconsin) deposition district courts to the (Pennsylvania) MDL court. In so holding, the court stated that, although the motions could not technically be "transferred," the deposition district court should ordinarily "stay local proceedings and then [] abide by the decision of the [MDL] district court." 79 F.3d 46, 48 (7th Cir. 1996). *Accord In re Welding Rod Products Liab. Litig., —* F.Supp.2d *— ,* 2005 WL 3525726, at *3 (N.D. Cal. 2005); *In Re Subpoenas Served on Wilmer, Cutler & Pickering and Goodwin Proctor LLP*, 255 F. Supp. 2d 1, 3 (D.D.C. 2003); *In Re Subpoena Issued to Boies, Schiller & Flexner LLP,* No. M8-85, 2003 WL 1831426, at *1 (S.D.N.Y. Apr. 3, 2003). We have not found any other case in which a deposition district court held that it lacked "jurisdiction" to decide such a motion, as the Tennessee district court appears to have done in this case. For purposes of this appeal, however, the basis on which the Tennessee district court declined to decide the motion is immaterial, because neither a jurisdictional nor a discretionary basis could deprive our court of its appellate jurisdiction.

We also note that the district court's opinion discussing its "jurisdictional" decision relies on our decision in *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114 (6th Cir. 1981). However, in that case, we discussed the "disruptive" effect of a *transferor* court being able to "act in matters of discovery independently of the transferee [MDL] court, at least until the proceedings are finally remanded to it." *Id.* at 118. *Upjohn* therefore concerned the allocation of authority as between transferor and transferee district courts in MDL proceedings, not as between deposition and MDL district courts. The fact that, in this case, the Tennessee district court also happened to be the transferor district court prior to consolidation is irrelevant for purposes of deciding whether it should abstain from exercising its powers as the deposition district court in light of the MDL statute.

Finally, Pogue argues that, with regard to only appellant West Paces, the D.C. Circuit properly has jurisdiction over its appeal because West Paces, unlike HCA, was a party to the *Pogue* litigation. We note that the original subpoena duces tecum and the D.C. district court order enforcing the subpoena duces tecum as written were directed only at HCA. It is only Judge Lamberth's final order compelling production of the three removed documents that refers to "HCA/West Paces" as the subject of the order. It appears likely that the challenged order is limited to HCA because the original subpoena duces tecum and the prior order to enforce the subpoena were limited, as we understand them, to HCA. Nonetheless, any necessary clarification of this issue is left to the D.C. district court in the first instance.

Having concluded that we are the correct court to review the order compelling disclosure under Sections 1294 and 1407, we must now decide whether the order is a reviewable decision.

B.

Under 28 U.S.C. § 1291, we review only "final decisions" of district courts. The Supreme Court has "consistently interpreted this language as indicating that a party may not take an appeal under this section until there has been a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (internal quotation omitted). The requirement of finality has "deep roots in American law." *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 422 (6th Cir. 1998), *aff'd sub nom. Cunningham v. Hamilton County*, 527 U.S. 198 (1999). In *Cobbledick v. United States*, 309 U.S. 323, 326 (1940), the Supreme Court noted the origin of the finality requirement in the Judiciary Act of 1789. The final judgment rule prevents "piecemeal appeals," the allowance of which can undermine the independence of the district judge, obstruct the resolution of just claims by means of harassment and cost, or generally prevent efficient judicial administration. *Firestone*, 449 U.S. at 374.

Discovery orders generally are not final decisions and cannot be reviewed unless the trial court enters a final judgment disposing of all claims. *Starcher*, 144 F.3d at 422. In *Alexander v. United States*, 201 U.S. 117 (1906), the Supreme Court held that an order compelling nonparties to produce subpoenaed documents is a non-appealable interlocutory order. *Id.* at 121. The Court in *Alexander* stated that the necessary finality would exist, however, if the nonparties were held in contempt of the order. *Id.* at 121-22. The rule laid out in *Alexander* – that an individual seeking to appeal a discovery order must first disobey the order and suffer a contempt citation – remains the general rule today. As this court has previously noted, "[t]he Supreme Court's adherence to the *Alexander* procedure for obtaining appellate review of discovery orders has been unswerving." *Starcher*, 144 F.3d at 422 n.4 (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n. 11 (1992)); *United States v. Ryan*, 402 U.S. 530, 532-33 (1971)); *see also Cunningham*, 527 U.S. at 204 n. 4 (1999) ("[W]e have repeatedly held that a witness subject to a discovery order, but not held in contempt, generally may not appeal the order.") (collecting cases).

Despite these requirements, HCA argues that this court has jurisdiction over this appeal pursuant to the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). In the alternative, HCA requests that this court convert its appeal into a petition for writ of mandamus, which it claims is "an appropriate vehicle" with which to address the novel and important issues of inadvertent waiver.

The collateral order doctrine is an exception to the final judgment rule. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996). Under the doctrine, an order is appealable under Section 1291 if the order (1) conclusively determines a disputed issue; (2) resolves an issue separate from the merits of the action that is too important to be denied review; and (3) will be effectively

unreviewable on appeal from a final judgment. *Id.*; *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This court has repeatedly held, however, that discovery orders are generally not appealable under the collateral order doctrine. *See, e.g., Starcher*, 144 F.3d at 424; *Coleman v. Am. Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992); *FDIC v. Ernst & Whinney*, 921 F.2d 83, 85 (6th Cir.1990); *Dow Chem. Co. v. Taylor*, 519 F.2d 352, 354-55 (6th Cir. 1975). Rather, to obtain review from this court, a complaining party must disobey the discovery order and incur an appealable contempt citation if that party is able to do so. *See Coleman*, 979 F.2d at 1138; *Taylor*, 519 F.2d at 355. HCA has not done so in this case.

We recognize that Judge Lamberth's order "sanctions" HCA under Rule 37(b) and awards Pogue's expenses, including attorney fees, under Rule 37(a). This court has previously indicated that an order issuing Rule 37(b) sanctions may be sufficient to obtain immediate review under the collateral order doctrine. *See Dow Chem. Co. v. Taylor*, 519 F.2d 352, 355 (6th Cir. 1975). In this case, however, the D.C. district court did not find that HCA was in contempt. Moreover, although Judge Lamberth nominally sanctioned HCA, the only penalty was the requirement that HCA disclose the documents. Thus, we think the "sanction" in this order does not meaningfully distinguish it from a routine discovery order which, absent a contempt citation, is not immediately reviewable. Moreover, in *Starcher*, this court held that an order imposing fees and costs under Rule 37(a) on an attorney because her opponents were forced to move for an order compelling her to comply with a previous discovery order was not immediately appealable under the collateral order doctrine. *See Starcher*, 144 F.3d at 423-24. The challenged order was not "completely separate" from the merits of the underlying case, as *Cohen* requires. *See Starcher*, 144 F.3d at 424. On *writ of certiorari*, the Supreme Court affirmed, holding that no Rule 37(a) sanction should be given immediate collateral review under *Cohen*. *See Cunningham*, 527 U.S. at 206 ("Perhaps not every discovery sanction will be inextricably intertwined with the merits, but we have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral."). We therefore do not believe that the presence in the appealed order of an expense award or a nominal sanction under Rule 37 alters our analysis.

In addition to the contempt route to review, we have allowed for a petition for writ of mandamus as a "means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality." *In re Perrigo Co.*, 128 F.3d 430, 436 (6th Cir. 1997). Although mandamus relief is available, it "is an extraordinary remedy, only infrequently utilized by this court." *See Perrigo*, 128 F.3d at 435. Indeed, the Supreme Court has said that the "remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). Finally, our cases indicate that mandamus relief is properly limited to "'questions of unusual importance necessary to the economical and efficient administration of justice,' or 'important issues of first impression.'" *Perrigo*, 128 F.3d at 435 (quoting *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982)).

The decision whether to grant mandamus relief involves analysis of five factors: (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; (5) the district court's order raises new and important problems, or issues of first impression. *Id.* at 435 (citing *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996)). Focusing on the first of these five factors, the ability of an aggrieved deponent to obtain an appealable contempt citation constitutes other adequate means to attain the relief desired.

Two recent decisions of this court have noted that two of our sister circuits use the collateral order doctrine, as opposed to mandamus, for immediate review of discovery orders involving claims of privilege. *See In re Lott*, 424 F.3d 446, 448 n.2 (6th Cir. 2005) (noting *United States v. Philip Morris, Inc.*, 314 F.3d 612, 619 (D.C. Cir. 2003) and *In re Ford Motor Co.*, 110 F.3d 954, 964 (3d Cir. 1997)); *Ross v. City of Memphis*, 423 F.3d 596, 599 (6th Cir. 2005) (same); *see also Lott*, 424 F.3d at 464 n.5 (Boggs, C.J., dissenting) (suggesting that this court may wish to adopt this position). As those cases note, however, this court has traditionally viewed mandamus as the sole method by which we might review a discovery order involving a claim of privilege. *See Lott*, 424 F.3d at 449; *Ross*, 423 F.3d at 599; *see also Ernst & Whinney*, 921 F.2d at 85. We decline to determine whether the collateral order doctrine or the writ of mandamus is the more appropriate basis on which we might review a discovery order requiring immediate attention. We will assume, solely for the purpose of deciding the jurisdictional question in this appeal, that either jurisdictional basis would allow this court to provide relief in the extraordinary case.[6]

This case is not, however, extraordinary. HCA has a clear alternate route to achieve review of this order. If HCA seeks to challenge the propriety of the district court's order, it may disobey the order and suffer a contempt citation.[7] As the Fourth Circuit noted:

> We recognize, of course, that the contempt route is a difficult path to appellate review, and one that may carry with it a significant penalty for failure. In discovery disputes, however, this difficulty is deliberate. As Judge Friendly has noted, the contempt limitation ensures that the aggrieved party will first take a careful "second look" at the issue in question to determine whether it truly warrants inviting a contempt citation. *National Super Spuds v. New York Mercantile Exch.*, 591 F.2d

---

[6]The concurring opinion overlooks the requirement that mandamus relief be used only in extraordinary situations. Contrary to the concurring opinion's suggestions, its approach is not consistent with the reasoning of *In re Lott*, which specifically analyzed whether a death row inmate's claim of actual innocence in a petition for writ of habeas corpus constitutes an implicit waiver of the attorney-client and work product privileges to the extent necessary for the government to defend the actual innocence claim. *See* 424 F.3d at 448. In that case, the court stated that "whether an assertion of actual innocence effects an implied waiver of the attorney-client and work product privileges is plainly an issue of first impression in this Circuit, and apparently an issue of first impression in the federal courts." *Id.* at 450. Similarly, in *In re Perrigo*, the extraordinary nature of the petition was apparent on its face, because the district court had conditioned its review of the defendant's motion to dismiss on the defendant's compliance with the discovery order in question. 128 F.3d 434. Although *In re Powerhouse Licensing* ostensibly supports conducting a merits inquiry into the privilege claim, in that case, the court expressly found that petitioners had no other readily available means of relief from the orders at issue. --- F.3d ----, 2006 WL 509390, at *4 (6th Cir. 2006). Rather than identify some substantial or novel issue requiring immediate review, the concurring opinion undertakes a straight-forward merits review of a routine discovery order issued to a nonparty.

[7]Unlike a party, which can only immediately appeal an adjudication of criminal contempt, a nonparty can immediately appeal an adjudication of either civil or criminal contempt. *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned. The order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action. . . . Once the right to appeal a civil contempt order is acknowledged, arguments in its legitimate support should not be so confined that the power of the issuing court remains untested." (citations omitted)); *United States v. Johnson*, 736 F.2d 358, 359 n.1 (6th Cir. 1984) ("[A] judgment of civil contempt against a party is normally not final and appealable but . . . a judgment of civil contempt against a nonparty is final and appealable."); *In re Manufacturers Trading Corp.*, 194 F.2d 948, 955 (6th Cir. 1952) ("An order adjudging one guilty of criminal contempt is final and appealable; an order adjudging a party litigant in civil contempt is said to be interlocutory and reviewable only on appeal from the final decree in the main action. But a civil contempt order against a person not a party to the suit is said to be final and appealable." (citations omitted)); *see also* 16 Charles Alan Wright et al., Federal Practice and Procedure § 3914.23, at (2d ed. 1996 & supp. 2005) ("A nonparty can appeal an order of either civil or criminal contempt; a party can appeal an order of criminal contempt, but is not supposed to be able to appeal an order of civil contempt.").

174, 180 (2d Cir. 1979). Indeed, the discovery appeals that arise from that calculus will most likely be those of the greatest significance to both parties–the party resisting discovery must risk a citation for contempt, while the party seeking discovery must move for contempt and thereby risk an interlocutory appeal. *Id.* The alternative to the contempt route, by contrast, is one that encourages appeal of every unpalatable discovery ruling.

*MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 121-22 (4th Cir. 1994) (footnote omitted). Although it is not a party to the *Pogue* litigation, HCA's status as both the privilege-holder and document-possessor seeking to prevent disclosure gives it powerful incentives to suffer such a contempt citation.[8]

### III.

For the foregoing reasons, the appeal is dismissed.

---

[8] These interests distinguish this case from those that would fit under the doctrine announced in *Perlman v. United States*, 247 U.S. 7 (1918). The *Perlman* doctrine allows for immediate appeal from a discovery order when the order is directed to a disinterested nonparty who will not risk contempt merely to protect privacy interests that are more important to someone else. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992) (citing *Perlman*); *see also Ross*, 423 F.3d at 599.

---------------------

**CONCURRENCE**

---------------------

GRIFFIN, Circuit Judge, concurring.

I join in the majority opinion except for Section II B, which requires appellants West Paces Medical Center ("West Paces") and HCA, Inc., to disobey the district court's discovery order and suffer a contempt citation in order to challenge the propriety of the order. Under the present circumstances, in which the discovery order implicates the attorney-client privilege, I would hold, consistent with *In re Lott*, 424 F.3d 446 (6th Cir. 2005), that mandamus, not contempt, is the appropriate jurisdictional avenue to address appellants' claims. However, because the district court did not clearly err in concluding that appellants' inadvertent disclosure of the privileged materials forfeited the privilege, I conclude that mandamus should not issue. Thus, I concur in the result, which is the dismissal of the appeal.

I.

As the majority recognizes, this Court has eschewed the collateral order doctrine as a means to obtain jurisdiction and undertake immediate review of orders compelling discovery during the course of ongoing litigation. *See, e.g.*, *In re Lott,* 424 F.3d at 449 n.2; *Ross v. City of Memphis,* 423 F.3d 596, 599 (6th Cir. 2005); *Starcher v. Correctional Medical Systems, Inc.*, 144 F.3d 418, 422-25 (6th Cir. 1998); *Coleman v. Am. Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992); *Fed. Dep. Ins. Corp. v. Ernst & Whinney*, 921 F.2d 83, 85 (6th Cir. 1990); *Dow Chemical Co. v. Taylor*, 519 F.2d 352, 354-55 (6th Cir. 1975). In the interest of avoiding piecemeal litigation, we have typically limited a litigant who seeks to challenge a discovery order to two possible remedies – either fail to comply with the order and then appeal from a sentence of contempt,[1] or seek the extraordinary remedy of a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651.[2]

Recently, however, in *In re Lott*, we noted that where a claim of privilege is involved,[3] the use of discretion inherent in our mandamus jurisdiction is particularly appropriate. We stated:

> The inability to cure an unlawful piercing of the privilege through direct appeal has led numerous courts of appeals to regularly utilize mandamus when important interests such as privilege are at issue. "Writ review is rather frequently provided . . . because of the desire to protect against discovery of information that is claimed to be protected by the Constitution, *privilege*, or more general interests in privacy." 16 Charles Alan Wright et al., *Federal Practice and Procedure*, § 3935.3, at 605-06 (2d ed. 1996 & supp. 2005) (emphasis added); . . . *Hahnemann University Hospital v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996); see also *In re Regents of University of California*, 101 F.3d 1386, 1387 (Fed. Cir. 1996), cert. denied 520 U.S. 1193, 117 S.Ct. 1484, 137 L.Ed.2d 695 (issuing mandamus to set aside discovery order where district court erroneously ordered discovery over claim of attorney-client privilege);

---

[1] *See, e.g.*, *Coleman*, 979 F.2d at 1138; *Butcher v. Bailey*, 753 F.2d 465, 471 (6th Cir. 1985); *Dow*, 519 F.2d at 355.

[2] *See, e.g.*, *In re Perrigo Co.*, 128 F.3d 430, 435-37; *Fed. Dep. Ins. Corp.*, 921 F.2d at 85-86.

[3] In *In re Lott*, a death row inmate successfully petitioned this Court for mandamus relief from a discovery order in which the district court "waived" his attorney-client privilege because he claimed actual innocence.

*Chase Manhattan Bank, N.A. v. Turner & Newall*, *PLC*, 964 F.2d 159, 163 (2d Cir. 1992) (similar); *In re Bieter*, 16 F.3d 929, 931-33 (8th Cir. 1994) (similar). This Court has utilized the All Writs Act to alter a discovery order implicating the attorney-client privilege. *In re Perrigo*, 128 F.3d 430, 441 (1997) (altering a discovery order that would have required public disclosure of information protected by the attorney-client privilege).

These Courts have all found that forcing a party to disclose confidential communications and seek redress via direct appeal after the court has reached a final judgment is an inadequate remedy. In *Hahnemann*, the Court of Appeals for the [Third] Circuit held that the type of relief afforded by direct appeal is usually insufficient when a claim of privilege is made. 74 F.3d at 461 ("when a district court orders production of information over a litigant's claim of a privilege not to disclose, appeal after a final decision is an inadequate remedy . . . for compliance with the production orders complained of destroys the right sought to be protected.") (quoting *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir, 1984)); see also *University of California*, 101 F.3d at 1387 ("an appeal after disclosure of the privileged communication is an inadequate remedy") (citation omitted).

424 F.3d at 450-51.

We further rejected the notion that in such circumstances, mandamus is unnecessary because this Court could remedy any harm on direct appeal:

By this logic, if discovery proceeded and privileged material was both disclosed and admitted into evidence against Lott, this Court could find that the privileged material should not have been used against him and treat the admission just as we would any other evidentiary error. But as the Court of Appeals for the Second Circuit has noted, "a pertinent aspect of confidentiality will be lost, even though communications later deemed to be privileged will be inadmissible at trial." *Chase Manhattan Bank*, 964 F.2d at 165. The damage to the attorney-client relationship will have already been done by the disclosure itself.

*Id.* at 451. *See also In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (holding that "forced disclosure of privileged material may bring about irreparable harm" and, thus, the petitioner appealing an order requiring the production of a privileged statement had "no adequate means to attain the discovery relief it [sought] except by mandamus . . . .").

It is significant to note, in this respect, that "a judgment of civil contempt is not a final decree and therefore is not appealable in itself." *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976) (citing *Fox v. Capital Co.*, 299 U.S. 105, 107 (1936); *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 500 (6th Cir. 2000). Thus, the contempt route requires an aggrieved party claiming privilege to be penalized by a contempt citation, while in the interim presumably being forced to disclose the privileged materials until after a final judgment has issued and an appeal has been pursued. This is, I believe, an arduous and ineffective method of resolving a discovery dispute dealing with sensitive privileged information.

The disobedience and contempt route, used under these circumstances, contradicts the notion that our judicial system largely depends on the voluntary acceptance of court orders. "Being forced to disobey an order of the district court in order to obtain review of the court's ruling seems a harsh choice." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1480 (9th Cir. 1992). As more bluntly stated by another court, "[W]e reject the suggestion that an appeal can properly come

before us only if some officer of IBM refuses to deliver the 1,200 documents, subjects himself to the consequences of contempt, and appeals from the contempt judgment. The law today must be more ingenious, flexible and resourceful in its ability to avoid any such old-fashioned and semi-barbaric procedure." *International Bus. Machs. Corp. v. United States*, 471 F.2d 507, 511 (2d Cir. 1972), vacated on other grounds, 480 F.2d 293 (2d Cir. 1973). *See also United States v. Philip Morris, Inc.*, 314 F.3d 612, 620 (D.C. Cir. 2003) (allowing a collateral order appeal from a discovery order rejecting an attorney-client privilege and noting that the contempt route is an unsatisfactory means to appeal).

In their treatise, Wright and Miller, acknowledging that the contempt route is a well-entrenched path to appeal, nonetheless have observed that: "We are accustomed to appeals that are available as a matter of right or that depend on an explicit exercise of discretion by the trial court, court of appeals, or both. A system that depends on a gamble with contempt, and for parties a gamble that the contempt sanctions may be civil and not appealable, seems unprincipled." 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3914.23, p. 155 (2d ed. 1992). Conversely,

> Mandamus provides the most direct way around the rule that generally bars final judgment appeals from discovery orders. The great advantages of mandamus are that it is discretionary and can be adapted much more easily than final judgment doctrine to provide review of questions that are important either intrinsically or because of general impact, without simultaneously opening the door to review of similar questions in all future cases.

*Id.*, § 3914.23 at 132.

Most recently, in *In re Powerhouse Licensing, LLC*, 2006 WL 509390 (6th Cir. March 2, 2006) (unpublished), we recognized the applicability of mandamus to analogous circumstances when we considered a petition for a writ of mandamus in an appeal from an order requiring the production of documents containing privileged attorney-client communications. Although we ultimately denied mandamus, concluding that the petitioner had waived the privilege, we favorably cited *In re Lott* for the proposition that "the scope of the attorney-client privilege implicates the kind of important interests that would normally favor mandamus." 2006 WL 509390 at *4 n.3.

Thus, consistent with the rationale employed in *In re Lott*, I would treat the current appeal as a petition for writ of mandamus and evaluate it pursuant to the multi-factor test which our Court has endorsed for determining the propriety of mandamus, i.e., whether: (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression. *In re Lott*, 424 F.3d at 449 (citing *In re Chimenti*, 79 F.3d 534, 539 (6th Cir. 1996), in turn citing *In re Bendectin Products Liability Litigation*, 749 F.2d 300, 304 (6th Cir. 1984)). In weighing these factors, we employ a "flexible rather than a rigid approach." *In re Perrigo Co.*, 128 F.3d at 435.

In this case, it is clear that the first and second factors favor appellants. As already discussed, they have no other adequate means to attain relief from the discovery order and an appeal after final judgment is an ineffectual remedy. However, with regard to the third factor, I conclude that the district court's order requiring the production of the privileged materials was, under the circumstances, not clearly erroneous as a matter of law. *In re Lott*, 424 F.3d at 449. The district court, properly applying the relevant law of the District of Columbia, specifically, *In re Sealed Case*,

877 F.2d 976, 980 (D.C. Cir. 1989), held that appellants' inadvertent disclosure of the documents at issue effected a waiver of the privilege.[4] I agree.

In *In re Sealed Case*, the D.C. Circuit Court of Appeals opined that, despite the importance of the attorney-client privilege, "[t]he courts will grant no greater protection to those who assert the privilege than their own precautions warrant. We therefore agree with those courts which have held that the privilege is lost 'even if the disclosure is inadvertent.'" 877 F.2d at 980 (internal citations omitted). Such an inadvertent waiver extends to all other communications relating to the same subject matter. *Id.* at 980-81.

Here, appellants produced the documents at issue for plaintiff Pogue's review and then, after realizing that they had mistakenly disclosed the privileged information, secreted the materials from the production box. Pursuant to *In re Sealed Case*, this disclosure, even though a product of human error, resulted in the forfeiture of the privilege as to the documents in question. *Id*. at 980. In the absence of extraordinary circumstances that would otherwise excuse this waiver, *see Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978), the district court appropriately ordered the production of "all letters and memoranda containing information about prohibited financial arrangements with physicians, and remuneration to physicians for referrals that may violate kickback and self-referral laws."

Consequently, I concur in the result reached by the majority, albeit for different reasons. The contempt route is not a viable remedy for a party who challenges an order implicating the production of privileged information. Rather, mandamus provides the appropriate channel by which to review a discovery order of this nature. *In re Lott*, 424 F.3d at 449-51. However, because the third factor of the mandamus test weighs heavily against the entitlement to such extraordinary relief under these particular circumstances, I conclude that a petition for mandamus should not issue and this Court otherwise lacks jurisdiction to entertain this appeal. The appeal should therefore be dismissed.

---

[4]The district court's waiver decision is reviewed de novo. *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997).